## In re ADOPTIONS OF GROH et al.

[Cite as *In re Adoptions of Groh,* 153 Ohio App.3d 414, 2003-Ohio-3087.]

Court of Appeals of Ohio,
Seventh District, Belmont County.

No. 03 BE 03.

Decided June 9, 2003.

416

Paul B. Jefferis, for appellees James and Tiffanie Groh.

Thomas, Fregiato, Myser, Hanson & Davies and Christopher J. Gagin, for appellant Carla Sue Dallas.

WAITE, Presiding Judge.

{¶ 1} Carla Sue Dallas, appellant, appeals from a judgment of the Belmont County Court of Common Pleas, Probate Division, that granted two adoption petitions filed by appellees, Tiffanie Marie Groh and James Douglas Groh, ordering the adoption of appellant's two minor children. Generally, the natural mother's consent is required before an adoption can take place. R.C. 3107.06. The trial court held that appellant's consent to the adoption was not required because she had failed to provide support for the children during the one-year period prior to the filing of the adoption petitions. See R.C. 3107.07(A). The court erred in essentially deciding that the failure to pay de minimus child-support payments of $50 per child was sufficient to deprive appellant of her right to withhold her consent to the adoption even though appellant established unrebutted justifiable cause for not making the payments. The trial court also erred by not conducting a subsequent hearing to determine whether the adoption would be in the best interests of the children. Appellant's assignments of error are sustained, and the judgment of the trial court is vacated.

{¶ 2} Appellant is the mother of Trenton Douglas Groh, born October 8, 1998, and James Dalton Groh, born December 23, 1999. James Douglas Groh is the father of the two children. Appellant and James Groh were married at the time the two children were born. On March 5, 2001, the parties were granted a divorce in Belmont County. The divorce decree did not make a final determination as to which parent would be the primary residential parent of the children.

{¶ 3} On June 8, 2001, James Groh married appellee Tiffanie Groh, who had been a former babysitter of the two children. James and Tiffanie Groh had been living together for two years prior to their marriage.

{¶ 4} A separate magistrate's decision regarding parental rights and responsibilities was issued on August 7, 2001. James Groh was designated the residential parent and appellant was given visitation rights on alternate weekends. The magistrate noted that although appellant was planning to work full-time for $7.15 per hour, "she is pregnant and that employment may not last long without interruption. Based on that fact, the magistrate ordered her to make only the statutorily minimum child-support order of $50.00 for each child plus 2% poundage, which totaled $102.00 a month beginning August 1, 2001."

{¶ 5} Appellant was employed intermittently at various jobs between August 2001 and November 2002, working as a nurse's aide, a bartender, and a cook. Appellant also changed her home address a number of times after August 2001, moving from Cadiz, Ohio, to Perry County, Ohio, and back to Cadiz. Appellant was pregnant during part of this time period. Appellant gave birth to a son on October 1, 2001, and again to another son on October 8, 2002.

{¶ 6} On September 3, 2002, James and Tiffanie Groh filed petitions for adoption in the Belmont County Court of Common Pleas, Probate Division. The petitions contained an allegation that appellant's consent to the adoption was not required because she had failed to provide maintenance and support for the children for one year.

{¶ 7} On September 3, 2002, the probate judge filed a judgment entry setting a hearing date of October 18, 2002, to decide the adoption petitions.

{¶ 8} On September 6, 2002, the trial court filed a notice of hearing on petition for adoption. The notice repeated the allegation that appellant's consent to the adoption was not required due to appellant's failure to provide support and maintenance for one year.

{¶ 9} A hearing did take place on October 18, 2002, but the trial court decided to continue the hearing to November 15, 2002, so that appellant could submit the documents needed to obtain court-appointed counsel. The court appointed counsel for appellant on October 21, 2002.

{¶ 10} The hearing reconvened on November 15, 2002. The hearing primarily dealt with whether appellant had visited or provided support for Trenton and James in the year prior to the filing of the adoption petitions. Appellees also presented some evidence concerning whether the adoption would be in the best interests of the children.

{¶ 11} On November 21, 2002, the probate court filed a judgment entry finding that there was justifiable cause for appellant's failure to visit the children. The

court found, on the other hand, that there was no justifiable cause for appellant's failure to provide maintenance and support for one year before the adoption petitions were filed. The court emphasized that appellant was under a court order to pay $102 per month in child support. It was undisputed that appellant never made a support payment. The court noted that appellant did have some earned income during the period, although it was less than $10,000, and also received an educational grant of $987, Ohio Works First income of $373 per month, and food stamps worth $314 per month.

{¶ 12} The court held that "the mother has failed, without justifiable cause, to provide for the maintenance and support of the minor children as required by law or judicial decree for a period of at least one year immediately preceding the filing of the Adoption Petition in this matter." The court also found that appellant showed a lack of concern or care for the children. For these reasons, the court found that it was in the best interests of the children to grant the adoption petitions.

{¶ 13} The court set another hearing for December 13, 2002. The court did not state the purpose of this hearing. The hearing took place as scheduled. It is clear from the record that the purpose of the hearing was not to present testimony or cross-examine witnesses, but, rather, to explain to Tiffanie Groh her responsibilities as an adoptive parent.

{¶ 14} On December 13, 2002, the court filed two documents entitled "final decree of adoption." On January 8, 2003, appellant filed a timely appeal of the adoption decrees.

{¶ 15} Appeals from orders granting or denying an adoption of a minor child are expedited appeals as stated in App.R. 11.2(C)(1).

{¶ 16} This court filed a journal entry on March 4, 2003, granting a 14–day extension to appellant to file a brief. The journal entry informed the parties that "[n]o further leaves will be given." The journal entry noted that the appeal was expedited because of App.R. 11.2(C)(1).

{¶ 17} Appellant filed her brief on March 11, 2003. Appellees' responsive brief was due by March 31, 2003. On May 8, 2003, we informed the parties that appellees would not be permitted to appear at oral argument or file a responsive brief. Appellees attempted to file a brief instanter on May 12, 2003. We denied the request on May 27, 2003, because of the urgency of the appeal and because the only reason given for failing to file a responsive brief was the attorney's busy trial schedule. While we are very reluctant to grant extensions of time for filing briefs in expedited appeals, this is particularly true when the motion for an extension of time is filed after the deadline for filing the briefs has passed.

{¶ 18} The result of appellees' failure to file a brief is that this court may accept appellant's statement of facts and analysis of the issues as correct and reverse the trial court's judgment if appellant's brief reasonably appears to support that result. App.R. 18(C).

{¶ 19} Appellant's first assignment of error asserts:

{¶ 20} "The trial court's finding the appellant failed to, without justifiable cause, provide for the maintenance and support of the minor children was against the manifest weight of the evidence."

{¶ 21} Appellant argues that her consent was required before the adoption could be granted, unless appellees proved by clear and convincing evidence that her consent was not required under one of the categories listed in R.C. 3107.07.

{¶ 22} R.C. 3107.06 states:

{¶ 23} "Unless consent is not required under section 3107.07 of the Revised Code, a petition to adopt a minor may be granted only if written consent to the adoption has been executed by all of the following:

{¶ 24} "(A) The mother of the minor[.]"

{¶ 25} Appellees attempted to prove that appellant's consent was not required under R.C. 3107.07(A), which states:

{¶ 26} "*Consent to adoption is not required* of any of the following:

{¶ 27} "(A) A parent of a minor, *when it is alleged in the adoption petition and the court finds* after proper service of notice and hearing, *that the parent has failed* without justifiable cause to communicate with the minor or *to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year* immediately preceding either the filing of the adoption petition or the placement of the minor in the home of the petitioner." (Emphasis added.)

{¶ 28} Appellees attempted to prove that appellant did not support the children for a period of one year immediately preceding the filing of the adoption petitions.

{¶ 29} The burden is on the party petitioning for adoption to prove by clear and convincing evidence that all consents have been obtained or are not required. *In re Adoption of Holcomb* (1985), 18 Ohio St.3d 361, 18 OBR 419, 481 N.E.2d 613, paragraph four of the syllabus; see, also, *In re Adoption of Bovett* (1987), 33 Ohio St.3d 102, 515 N.E.2d 919, paragraph one of the syllabus; *In re Adoption of Masa* (1986), 23 Ohio St.3d 163, 23 OBR 330, 492 N.E.2d 140, paragraph one of the syllabus. Specifically, this means that appellees were required to prove "(1) that the natural parent has failed to support the child for

the requisite one-year period, and (2) that this failure was without justifiable cause." *Bovett,* supra, at paragraph one of the syllabus.

{¶ 30} If the petitioner has shown by clear and convincing evidence that the natural parent has failed to support the child for one year, the burden of going forward with evidence shifts to the natural parent to show justifiable cause for such failure. Id. at paragraph two of the syllabus. If the natural parent provides evidence of justifiable cause, the petitioner for adoption must also prove, by clear and convincing evidence, that there was no justifiable cause for the failure to support the child for one year. Id. The burden of persuasion lies with the petitioner at all times in adoption proceedings. Id. The petitioners in this case were James Groh and Tiffanie Groh.

{¶ 31} "The question of whether justifiable cause for failure to pay child support has been proven by clear and convincing evidence in a particular case is a determination for the probate court and will not be disturbed on appeal unless such determination is against the manifest weight of the evidence." *Masa,* supra, 23 Ohio St.3d 163, 23 OBR 330, 492 N.E.2d 140, paragraph two of the syllabus. A reviewing court will usually affirm the judgment of the probate court in adoption proceedings as long as the record contains some competent and credible evidence supporting the probate court's findings. *In re Adoption of Hudnell* (1996), 113 Ohio App.3d 296, 302, 680 N.E.2d 1055, citing *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus.

{¶ 32} Appellant admits that she did not pay child support in the year preceding the filing of the adoption petitions. Appellant argues that this fact alone should not have destroyed her right to withhold consent to the adoption. It should be pointed out that appellant's child-support order was the statutory minimum support order of $50 per child. R.C. 3119.06. Appellant contends that neither appellees nor the Belmont County Child Support Enforcement Agency ("BCCSEA") attempted to collect the de minimis child-support payments. Appellant points to her own testimony and to appellant's exhibit No. 2 to show that the BCCSEA had not even opened a case file on appellant concerning her child-support payments until September 11, 2002. This was after appellees filed their petitions for adoption. Appellant notes that appellees did not dispute or rebut the fact that the BCCSEA did not open a file on appellant until September 11, 2002.

{¶ 33} Appellant also presented evidence that James Groh attempted to conceal his whereabouts by keeping an unlisted phone number, by refusing to let any of his relatives reveal his whereabouts or give out his phone number, and by moving to an undisclosed location in Barnesville, Ohio. She also notes that James Groh prevented her from exercising some of her visitation rights.

{¶ 34} Finally, appellant contends that she showed justifiable cause for failing to provide child-support payments. She testified that she was pregnant twice and gave birth to two children after being divorced from James Groh, that she did not receive any support for those two children, and that she stopped working so that she could care for her children and for an infirm uncle.

{¶ 35} Appellant does not cite any specific cases to support her view that she was justified in failing to support the children, other than the cases already mentioned. She does cite one case relating to her failure to communicate with the children for one year, but the trial court had previously ruled, on November 21, 2002, that appellant had justifiable cause for her failure to communicate with the children.

{¶ 36} The record supports appellant's recitation of facts. Of course, the trial court may have relied on other facts in making its decision, but these do not appear in a journal entry, and appellees have not alerted us to those facts because they failed to file a timely responsive brief in this appeal.

{¶ 37} As an initial matter, we must discuss the fact that the effect of the probate court decision is that appellant has been divested of all parental rights over two of her children. The relationship between a parent and child is a constitutionally protected liberty interest. See *In re Adoption of Zschach* (1996), 75 Ohio St.3d 648, 653, 665 N.E.2d 1070. It is well recognized that a parent's right to raise a child is an essential and basic civil right. *In re Murray* (1990), 52 Ohio St.3d 155, 157, 556 N.E.2d 1169, quoting *Stanley v. Illinois* (1972), 405 U.S. 645, 651, 92 S.Ct. 1208, 31 L.Ed.2d 551. The permanent termination of parental rights is the family law equivalent to the death penalty in criminal law. *In re Hayes* (1997), 79 Ohio St.3d 46, 48, 679 N.E.2d 680. When a court determines whether to permanently terminate parental rights, the court must grant the affected parent "every procedural and substantive protection the law allows." *In re Smith* (1991), 77 Ohio App.3d 1, 16, 601 N.E.2d 45.

{¶ 38} Any exception to the parental consent requirement for adoption "must be strictly construed so as to protect the right of natural parents to raise and nurture their children." *In re Adoption of Schoeppner* (1976), 46 Ohio St.2d 21, 24, 75 O.O.2d 12, 345 N.E.2d 608.

{¶ 39} When a parent is accused of not having provided support and maintenance for one year, the relevant inquiry is not whether the parent provided support "but whether the parent's failure to support * * * is of such magnitude as to be the equivalent of abandonment." *Celestino v. Schneider* (1992), 84 Ohio App.3d 192, 196, 616 N.E.2d 581; *In re Adoption of McNutt* (1999), 134 Ohio App.3d 822, 829, 732 N.E.2d 470.

{¶ 40} Appellant does not dispute the fact that she did not make any type of support contribution for the children in the year preceding the filing of the adoption petitions. Appellant's argument at trial and on appeal focuses on her justifications for failing to provide any maintenance or support.

{¶ 41} Appellant seems to be confused about which party bore the burden of persuasion at trial. James and Tiffanie Groh, as the parties who filed the adoption petitions, bore the burden of production and the burden of persuasion to show that appellant did not provide support or maintenance. Once James and Tiffanie Groh established that appellant did not provide support and maintenance for one year, it was incumbent upon appellant to provide some explanation of a justifiable cause for not providing support and maintenance. Appellant provided a number of theories of justifiable cause. "Although the nonconsenting parent is responsible for articulating a justifiable cause, no burden is to be placed upon the nonconsenting parent to establish that his or her failure was justifiable." *In re Doe* (1997), 123 Ohio App.3d 505, 508, 704 N.E.2d 608. Appellant did, in fact, provide evidence to support her theories of justifiable cause.

{¶ 42} The burden was then on James and Tiffanie Groh to show by clear and convincing evidence that appellant did not have justifiable reasons for failing to provide support and maintenance. They do not appear to have met this burden in the trial court. Their failure to provide a brief in this appeal greatly hinders this court's ability to find clear and convincing evidence against appellant's theories of justifiable cause, particularly when appellant cites very strong facts justifying her failure to make child-support payments or otherwise contribute support and maintenance.

{¶ 43} First, appellant was pregnant for much of the time prior to the filing of the adoption petitions. When she was able to work, it was for relatively low wages. Low wages have been considered to be a very significant factor in justifying a failure to provide support and maintenance in an adoption action. *In re Adoption of Kessler* (1993), 87 Ohio App.3d 317, 323, 622 N.E.2d 354; *In re Adoption of Howell* (1991), 77 Ohio App.3d 80, 97, 601 N.E.2d 92. "It is axiomatic that a natural parent's failure to support her child is justified when that parent's financial condition is such that she is unable to support her child." *In re Adoption of Way* (Jan. 9, 2002), 4th Dist. No. 01CA23, 2002 WL 59629; see, also, Annotation, Natural Parent's Indigence as Precluding Finding that Failure to Support Child Waived Requirement of Consent to Adoption (1989), 71 A.L.R.4th 305.

{¶ 44} Second, it appears that neither appellees nor BCCSEA attempted to collect child-support payments from appellant. A line of cases, primarily from the Second Appellate District, has held that a natural parent is justified in not

providing support and maintenance under R.C. 3107.07(A) when the custodian of the child has sufficient means to support the child and expresses no interest in receiving additional support:

{¶ 45} "Where a child's needs are being adequately provided for by [custodial parents], who are in a better financial position than the natural parent, and the [custodial parents], being aware of the natural parent's financial circumstances, express no interest in receiving financial assistance from the natural parent, we conclude that the natural parent's failure to contribute towards the support of the child is not 'without justifiable cause,' for purposes of R.C. 3107.07(A)." *Matter of Adoption of Hadley* (May 6, 1991), 2d Dist. No. 90CA117, 1991 WL 227737. See, also, *In re LaValley* (July 9, 1999), 2d Dist. No. 17710, 1999 WL 961785; *Adoption of Way*, supra, 4th Dist. No. 01CA23.

{¶ 46} Third, when a court decides whether a biological parent was justified in failing to provide support, it should consider whether the custodial parents refused help or failed to ask for help from the biological parent. *In re Adoption of Mills* (Oct. 25, 1993), 12th Dist. No. CA93–04–036, 1993 WL 430473; *In re Adoption of Hadley*, supra, 2d Dist. No. 90CA117.

{¶ 47} The record in this case reflects that appellees made no effort to collect child support from appellant. Furthermore, it appears that the BCCSEA had not even opened a case file regarding appellant's child-support payments until after appellees filed their petitions for adoption. Appellees were also well aware of appellant's financial difficulties and personal situation. These facts weigh heavily in favor of appellant's argument on appeal.

{¶ 48} There are additional reasons in the record supporting appellant's argument. Appellant testified that she purchased gifts for the children but did not deliver them because appellees refused to permit her to see the children. Appellant's testimony is relevant to the issue of whether she at least attempted to provide some maintenance and support for her children. Maintenance and support, in the adoption context, do not refer simply to child-support payments or other monetary contributions. *In re Adoption of McNutt*, supra, 134 Ohio App.3d at 829, 732 N.E.2d 470. Maintenance and support, as used in R.C. 3107.07(A), may mean any type of aid to feed, clothe, shelter, or educate the child; provide for health, recreation, travel expenses; or provide for any other need of the child. Id. Supplying shoes, diapers, or any other clothing can constitute support and maintenance. Id. at 830, 732 N.E.2d 470.

{¶ 49} If appellant attempted to provide maintenance and support but was prevented from doing so by appellees, it would be difficult to conclude that her actions were the equivalent of abandonment. The trial court itself found that appellant was justified in not visiting the children in the year before the adoption

petitions were filed, presumably because appellees deliberately made it difficult for appellant to contact them or find where they were living.

{¶ 50} Appellees were required to provide clear and convincing evidence to disprove appellant's explanations for failing to pay child support or otherwise provide support and maintenance for the children. The record does not contain clear and convincing evidence to rebut appellant's justifications for failing to pay child support or provide other forms of maintenance and support for the children. Appellees did not respond to this appeal, and, therefore, we have relied primarily on appellant's presentation of the relevant facts and issues in this appeal. Appellant's statement of facts and analysis of the issues reasonably support her arguments. It appears from our review of the record that the trial court's decision finding that appellant's consent was not required for the adoptions was not based on clear and convincing evidence. Therefore, we reverse the probate court's finding that appellant's consent is not required, and we vacate both final decrees of adoption filed on December 13, 2002.

{¶ 51} Appellant's second and third assignments of error assert:

{¶ 52} "The trial court's finding [that] the adoptive placement was in the children's best interest was against the manifest weight of the evidence."

{¶ 53} "The trial court erred when it failed to grant appellant a 'best interest' hearing as Ohio Revised Code § 3107.14(C) requires."

{¶ 54} These two assignments of error are related and will be treated together.

{¶ 55} Appellant argues that there should have been a separate hearing to determine whether the adoption was in the best interests of the children. Appellant contends that the only hearing that took place was the hearing to determine whether appellant was required to consent to the adoption. Appellant notes that a second hearing did take place on December 13, 2002, but that the purpose of the hearing was not to present evidence, but, rather, was merely meant to finalize the adoption. Appellant was not permitted to present evidence or examine witnesses at the second hearing.

{¶ 56} Appellees have not responded to this appeal, and appellant's argument appears to be correct.

{¶ 57} Appellant did not consent to the adoption. Therefore, appellees were required to establish that appellant's consent was not required pursuant to R.C. 3107.07. As we explained above, appellees attempted to prove that her consent was not required under R.C. 3107.07(A).

{¶ 58} On November 21, 2002, the trial court determined that appellant's consent was not required under R.C. 3107.07(A), because she did not provide maintenance and support for one year prior to the filing of the adoption petitions.

At no point after November 21, 2002, did appellant have an opportunity to prove to the court that the adoption would not be in the best interests of the children.

{¶ 59} R.C. 3107.11 governs the requirements for the final adoption hearing. R.C. 3107.11(A) states:

{¶ 60} "After the filing of a petition to adopt an adult or a minor, the court shall fix a time and place for hearing the petition. The hearing may take place at any time more than thirty days after the date on which the minor is placed in the home of the petitioner. *At least twenty days before the date of hearing, notice of the filing of the petition and of the time and place of hearing shall be given by the court to all of the following:*

{¶ 61} "* * *

{¶ 62} "(2) *A person whose consent is not required as provided by division (A),* (G), (H), or (I) *of section 3107.07* of the Revised Code and has not consented[.]" (Emphasis added.)

{¶ 63} According to R.C. 3107.14, the purpose of the final adoption hearing is to determine whether all consents have been obtained or excused, and to determine whether the adoption is in the best interests of the child:

{¶ 64} "(C) If, at the conclusion of the hearing, the court finds that the required consents have been obtained or excused and that the adoption is in the best interest of the person sought to be adopted as supported by the evidence, it may issue * * * a final decree of adoption or an interlocutory order of adoption * * *."

{¶ 65} It must be pointed out again that "[a]ny exception to the requirement of parental consent must be strictly construed so as to protect the right of natural parents to raise and nurture their children." *In re Adoption of Schoeppner* (1976), 46 Ohio St.2d 21, 24, 75 O.O.2d 12, 345 N.E.2d 608; accord *Holcomb,* supra, 18 Ohio St.3d at 366, 18 OBR 419, 481 N.E.2d 613.

{¶ 66} A review of the procedural timeline of this case reveals that the trial court was required to schedule an additional hearing to determine the best interests of the children. Appellant did not, at any time, consent to the adoptions. On October 18, 2002, the trial court filed a judgment entry that continued the adoption hearing to November 15, 2002. At the time the judgment entry was filed, appellant had requested but had not yet been appointed counsel to assist her in these proceedings. The judgment entry did not state the purpose of the hearing, other than to say that it was a continuance of the hearing upon the petitions for adoption.

{¶ 67} The court appointed counsel for appellant on October 21, 2002.

{¶ 68} The November 15, 2002 hearing was primarily used to determine whether appellant's consent was required in order for the adoption petitions to be

approved, although there was some minor discussion directed at whether the adoption would be in the best interests of the children.

{¶ 69} In a judgment entry dated November 21, 2002, the trial court determined that appellant's consent was not required under R.C. 3107.07(A). The court did not stop there but further held that "it would be in the best interest of the minor children that this Petition be granted."

{¶ 70} It is clear from the record that it was not until November 21, 2002, that appellant was designated a person whose consent was not required for the adoption. Prior to that date, she was a natural parent whose consent was required for the adoption, and she retained all the rights of a natural parent.

{¶ 71} The fact that appellant's consent was not required for the adoptions did not automatically mean that she approved of the adoption or that her input did not matter. Even though the court determined that her consent was not required, she continued to be the natural mother of the children and was entitled to an opportunity to show that the adoptions were not in the best interests of the children.

{¶ 72} Appellant supports her argument with citations from *In re Adoption of Jorgensen* (1986), 33 Ohio App.3d 207, 515 N.E.2d 622. *Jorgensen* presents a situation fairly analogous to the instant case. In *Jorgensen*, the trial court conducted a hearing to determine whether the father's consent was required prior to approving an adoption. The trial court held that the father's consent was not required and set a subsequent hearing to determine whether it would be in the best interests of the child for the adoption to take place. The father was notified of the hearing but was prohibited by the court from appearing at the hearing or presenting evidence at the hearing. Id. at 208, 515 N.E.2d 622.

{¶ 73} *Jorgensen* held that Ohio's adoption statutes had the effect of abrogating the common-law rights of natural parents and, for that reason, must be strictly construed to protect the rights of natural parents. Id. at 209, 515 N.E.2d 622, citing *In re Adoption of Salisbury* (1982), 5 Ohio App.3d 65, 5 OBR 161, 449 N.E.2d 519. The *Jorgensen* court held that R.C. 3107.07(A) was meant to resolve only whether a parent's consent was required for the adoption to take place and was not meant to force the natural parent to consent to an adoption. Id. The court held that a trial court's decision pursuant to R.C. 3107.07(A) does not automatically result in an approved adoption but is simply a signal that the court may move on to the best-interests segment of the adoption proceedings. Id. The court held that "until the hearing on the merits of the petition and the best interest of the minor child has been determined, the natural parent not only retains parental rights and responsibilities but retains an overriding interest in being heard relevantly on the issue of whether the proposed adoption would be in the best interest of the child." Id.

{¶ 74} Other courts have agreed with *Jorgensen* that the probate court must conduct another evidentiary hearing to decide the best interests of the child after it decides that a parent's consent is not necessary for the adoption to take place. *In re Adoption of Kuhlmann* (1994), 99 Ohio App.3d 44, 51, 649 N.E.2d 1279; *In re Adoption of Jordan* (1991), 72 Ohio App.3d 638, 645–646, 595 N.E.2d 963.

{¶ 75} According to R.C. 3107.11(A), the court was required to give at least 20 days' notice of the final hearing on the adoption petition to anyone whose consent was not required under R.C. 3107.07(A). It was not until November 21, 2002, that the trial court made the determination that appellant's consent was not required. When we construe the adoption statutes strictly in appellant's favor (as we are required to do), she should have been given 20 days' notice of a hearing to decide the best interests of the children, and she should have been permitted to present evidence at that hearing. For these reasons, we sustain appellant's second and third assignments of error.

{¶ 76} In conclusion, all three of appellant's assignments of error have merit. The evidence was insufficient to support the finding that appellant failed to provide support and maintenance for one year prior to the filing of the adoption petitions. The trial court was also required to schedule a separate best-interests hearing once it decided that appellant's consent was not required for the adoptions to go forward. We therefore vacate the two December 13, 2002 final decrees of adoption and dismiss the adoption petitions filed by appellees.

Judgment vacated.

GENE DONOFRIO and VUKOVICH, JJ., concur.