OPINION
{¶ 1} B.F. ("B.") appeals from a judgment of the Montgomery County Court of Common Pleas, Probate Division, which denied his petition to adopt his step-son, H.M.F., without the consent of the boy's biological father, S.C. ("S.").
 {¶ 2} The probate court acted within its discretion in concluding that S. was justified in failing to support or communicate with his son in the year preceding the *Page 2 
filing of B.'s petition for adoption. As such, we will affirm the judgment of the probate court.
 I {¶ 3} H.M.F. was born on January 9, 2002, to Sa. N. ("Sa.") and S., who have never been married to one another. Sa. married the petitioner, B., in 2004. B. filed a petition to adopt H.M.F. in November 2007. B. alleged in his petition that S.'s consent to the adoption was not required because S. had failed, without justifiable cause, to communicate with and to provide for the maintenance and support of the child for at least one year preceding the filing of the petition.
 {¶ 4} The evidence established that S. had regular visitation with his son for the first years of his life. However, after Sa.'s marriage to B., she began to curtail S.'s visitation, citing S.'s smoking and drinking and her son's exhaustion after these visits. Frequent scheduling conflicts also developed, including the need for the boy to visit with other family members. During this period, B. would sometimes allow S. to take the boy for a visit when Sa. was not home and without her knowledge.
 {¶ 5} In October 2006, S. moved to Virginia in search of better employment opportunities. He testified, however, that the move did not work out as well as he had hoped in this respect. His car broke down shortly before his move, and the town where he lived with his mother in Virginia was 40 miles away from any significant employment opportunities. S. testified that he only had a few short-term jobs in the months after his move.
 {¶ 6} In early September 2007, S. obtained employment at a mattress factory lasting five or six months, during which time he claimed that child support was withheld *Page 3 
from his paycheck. He presented a paycheck which showed that child support had been withheld but did not provide evidence about who was the beneficiary of this child support or where it was sent. S. had a daughter, C, from another relationship, for whom he was also obligated to pay child support, but at some point he obtained custody of his daughter. It is unclear when S.'s daughter began to live with him, thus terminating his obligation to pay child support to her mother. A caseworker from Montgomery County Child Support Enforcement Agency testified that it received no payments from S. on his son's behalf during the period reflected on his paycheck from the mattress factory or in the year preceding the filing of the petition to adopt.
 {¶ 7} S. was laid off in February 2008. S. testified that, after he obtained custody of C., he did not receive child support from C.'s mother. When S. was not working, his only income was SSI and $230 per month from a work program to help with his daughter. He did not receive unemployment benefits because he had not had a chance to file. S. admitted that, other than the child support deductions from his paychecks, he did not pay any child support for his son from November 2006 to November 2007. He also did not send any gifts, clothes, or food. Sa. testified that the last time she had received any child support was in March 2006, when she received $34 that was diverted to her from S.'s income tax return.
 {¶ 8} With respect to communication, the parties agree that S. last saw his son on the son's birthday in January 2006. S. claimed that he had not initiated any telephone contact with the boy since he moved because he knew that Sa. would not allow it. He claimed that he did not pursue the issue of visitation or other contact in court because he was behind on his child support and thought that the child support *Page 4 
issue would work against him if he sought help with contacting the child. Sa. testified that S. made no attempt to visit or communicate with his son after he moved to Virginia.
 {¶ 9} Based on the evidence presented, the probate court concluded that S.'s consent to the adoption was required. B. appeals, raising two assignments of error.
 II {¶ 10} B.'s first assignment of error states:
 {¶ 11} "THE COURT'S DECISION THAT THE FATHER'S CONSENT WAS NECESSARY GOES AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE BECAUSE THE EVIDENCE CLEARLY AND CONVINCINGLY DEMONSTRATED THAT THE NATURAL FATHER HAD FAILED TO SUPPORT OR COMMUNICATE WITH THE CHILD FOR THE ONE YEAR PERIOD BEFORE THE PETITION WAS FILED WITHOUT JUSTIFIABLE CAUSE."
 {¶ 12} B. claims that the probate court's decision that S. was justified in failing to communicate with and to support his son in the year preceding the filing of the petition to adopt was against the manifest weight of the evidence.
 {¶ 13} The right of a parent to the care and custody of his or her children is one of the most fundamental in law. Santosky v. Kramer
(1982), 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599; In reAdoption of A.M. B., Montgomery App. No. 21973, 2007-Ohio-2584, at ¶ 12. This fundamental liberty interest of parents in the care, custody, and management of their children is not easily extinguished.Santosky, 455 U.S. at 753-754. Adoption terminates those fundamental rights. R.C. 3107.15(A)(1). Accordingly, adoptions are generally not permissible absent the written consent of both *Page 5 
parents. R.C. 3107.06; In re Adoption of Jones (1990),70 Ohio App.3d 576, 578.
 {¶ 14} Pursuant to R.C. 3107.07(A), a parent's consent to adoption is not required when that parent "has failed without justifiable cause to communicate with the minor or to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding either the filing of the adoption petition or the placement of the minor in the home of the petitioner." The party petitioning for adoption has the burden of proving, by clear and convincing evidence, that the parent failed to support or communicate with the child during the requisite one-year period and that there was no justifiable cause for the failure. In re Adoption ofHolcomb (1985), 18 Ohio St.3d 361, paragraph four of the syllabus;In re Adoption of J.M.N., Clark App. No. 08-CA-23 and 08-CA-24,2008-Ohio-4394, ¶ 11. Once the petitioner has established, by clear and convincing evidence, that the parent has failed to communicate with or support the child for the one-year period, the burden of going forward with evidence shifts to the parent to show some facially justifiable cause for the failure. In re Adoption of Bovett (1987),33 Ohio St.3d 102, paragraph two of the syllabus. The burden of proof, however, remains at all times with the petitioner, who must establish the lack of justifiable cause by clear and convincing evidence. Id. at 104.
 {¶ 15} Whether justifiable cause for failure to pay child support or for failure to communicate has been proven by clear and convincing evidence in a particular case is a determination for the probate court and will not be disturbed on appeal unless such determination is against the manifest weight of the evidence. In re Adoption of Masa (1986),23 Ohio St.3d 163, 166, citing In re Adoption of McDermitt (1980), *Page 6 63 Ohio St.2d 301, 306.
 {¶ 16} Although the court found that S. had failed to support or communicate with his son in the year preceding the filing of B.'s petition to adopt, it also found that he was justified in failing to support and communicate with the child. We will address each of these issues in turn.
 {¶ 17} On the issue of support, the probate court found that "[S.'s] financial circumstances were dire" during the year in question. Specifically, the court found that S. had earned very little money, approximately $1,400, which he had used to support his daughter. The court further found that, although his income had been "meager," S. had been willing to support his son and had believed that he was, in fact, doing so through payroll deductions. The Court found that "because of his meager financial resources, there was justifiable cause for [S.'s] failure to support" in the year preceding the petition for adoption.
 {¶ 18} On the issue of communication with the child, the probate court found that Sa. had significantly discouraged communication, thus justifying S.'s failure to communicate with his son. The court stated: "From [Sa.'s] manner of testifying and her demeanor, it was quite apparent to the Court that she wants to erase [S.] from her and their son's lives. It is obvious that she has a new life with a lucrative career, new husband, another child and she wants this to be her family. * * * [Sa.'s] pattern of behavior made [S.] feel that any effort made to contact his son was completely futile."
 {¶ 19} Significant interference by a custodial parent with communication between the non-custodial parent and the child, or significant discouragement of such communication, are relevant to whether there is justifiable cause for the non-custodial *Page 7 
parent's failure to communicate with the child. In re Adoption ofS.B.D., Miami App. No. 2006-CA-25, 2006-Ohio-5133, at ¶ 30, citingHolcomb, 18 Ohio St.3d 361.
 {¶ 20} Because the trier of fact sees and hears the witnesses at trial, we must defer to the factfinder's decisions whether, and to what extent, to credit the testimony of particular witnesses. State v.Lawson (Aug. 22, 1997), Montgomery App. No. 16288. Here, we recognize that the probate court could have reached a different conclusion based on the evidence presented. However, the probate court saw and heard the witnesses at the hearing, and we must defer to its determination of the weight to be given to the evidence and which of competing inferences should be drawn from that evidence. State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus; In re Adoptions of Groh,153 Ohio App.3d 414, 2003-Ohio-3087, at ¶ 31. . The probate court's conclusion that B. had failed to show, by clear and convincing evidence, that S.'s consent to the adoption was not required was not against the manifest weight of the evidence.
 {¶ 21} The first assignment of error is overruled.
 III {¶ 22} B.'s second assignment of error states:
 {¶ 23} "THE COURT ABUSED ITS DISCRETION WHEN IT ADMITTED THE RESPONDENT'S EXHIBIT BECAUSE IT WAS NOT PROPERLY AUTHENTICATED AND CONTAINED INADMISSIBLE HEARSAY."
 {¶ 24} B. contends that the probate court should not have admitted S.'s paycheck from Virginia into evidence because it was not authenticated. B. objected to the admission of the paycheck, but his objection was overruled. *Page 8 
 {¶ 25} B. claims that the paycheck was not authenticated because S. "never testified that it was in fact a pay stub." He also points out that S.'s testimony about the paycheck "did not match what the pay stub specifically stated." He asserts that the paycheck was hearsay and did not fall within any exception to the hearsay rule.
 {¶ 26} A condition precedent to the admissibility of documents is that documents must be authenticated or identified. Rodgers v.Pahoundis, 178 Ohio App.3d 229, 2008-Ohio-4468, at ¶ 124; St. Paul Fire Marine Ins. Co. v. Ohio Fast Freight, Inc. (1982), 8 Ohio App.3d 155,157. Generally, authentication or identification is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims. Rodgers at ¶ 124; Evid. R. 901 (A). "The common manner of identifying a document is through testimony of a witness with knowledge." St. Paul Fire Marine, 8 Ohio App.3d at 157. The evidence necessary to support a finding that the document is what a party claims it to be has a very low threshold, which is less demanding than the preponderance of the evidence. Burns v. May (1999),133 Ohio App.3d 351, 355, citing State v. Winfield (Feb. 7, 1991), Ross App. No. 1641. B.'s assertion that S. never identified the document in question as his paycheck is without merit. S. stated several times during his testimony that he had sent his paycheck to the court with a letter objecting to the adoption proceedings. Based on the transcript, the judge seems to have located the paycheck inside an envelope addressed to the court during the course of the hearing. She then handed it to S. and told him to look at it. He responded that he knew they were taking support out. Although S. had previously stated that the paycheck would show over $1,000 in child support deductions, the check actually showed that $671 had been withheld for this purpose. *Page 9 
S. also testified that he had circled the notation on the pay stub that reflected the amount of child support he had paid. The exhibit that was admitted contained such a marking. Although we acknowledge that S. did not accurately state the amount of child support reflected on the check before the judge presented it to him, we reject B.'s claim that S. had not sufficiently identified the document in question.
 {¶ 27} We also note that S. did not dispute the child support caseworker's testimony that no money had been received by her agency on his son's behalf. S. admitted that he did not know where the money deducted from his paycheck had gone, although he had believed that it had gone to his son. In view of this testimony, we believe that the paycheck was not offered for the truth of the matter asserted — that child support had been paid. Rather, it was offered in support of S.'s claim that he had believed he was paying child support. Accordingly, the paycheck was not hearsay. Evid. R. 801(C).
 {¶ 28} Finally, the probate court's finding that S. was justified in failing to support his child was based on his "dire" financial circumstances and his "meager" resources. The court was presented with unrefuted evidence from the child support enforcement agency that no support was received on behalf of S.'s son during the time in question, and the court does not appear to have placed great emphasis on S.'s belief that he had been paying child support. As such, any error in the admission of the document would have been harmless.
 {¶ 29} The second assignment of error is overruled.
 IV {¶ 30} The judgment of the probate court will be affirmed. *Page 10 
FAIN, J. and GRADY, J., concur.
Copies mailed to:
Shawn P. Hooks Robert L. Mues, S.C. Hon. Alice O. McCollum *Page 1