[Cite as *In re Adoption of M.G.*, 2015-Ohio-5185.]

# IN THE COURT OF APPEALS OF OHIO
# THIRD APPELLATE DISTRICT
# SHELBY COUNTY

IN RE:                                                CASE NO. 17-15-05

THE ADOPTION OF

   M.G.                                             **O P I N I O N**

[BRYCE GARMAN - APPELLANT].

Appeal from Shelby County Common Pleas Court
Probate Division
Trial Court No. 2014 ADP 016

**Judgment Affirmed**

**Date of Decision:  December 14, 2015**

**APPEARANCES:**

   *Scott A. Kelly* **for Appellant**

   *Stanley R. Evans* **and** *Aaron D. Lowe* **for Appellee**

**WILLAMOWSKI, J.**

{¶1} Petitioner-appellant Bryce Garman ("Garman") brings this appeal from the judgment of the Shelby County Court of Common Pleas, Probate Division, denying his petition to adopt M.G. Garman alleges that the trial court erred in determining that Garman failed to prove, by clear and convincing evidence that the father, Aaron Mescher ("Aaron") lacked justifiable cause for his failure to support. For the reasons set forth below, the judgment is affirmed.

{¶2} On January 3, 2008, M.G. was born to Staci Garman ("Staci") and Aaron. Tr. 16. No legal action was taken by any party to establish paternity, child support, or visitation. Instead the parties proceeded by agreement of the parties and their families with the desire "to keep stuff out of the court". Tr. 17. In the winter of 2008, guardianship of M.G. was voluntarily granted to Staci's mother. Tr. 17. The guardianship continued until July of 2012. Tr. 18. On June 29, 2013, Staci married Garman. Tr. 13. On December 8, 2014, Garman filed a petition to complete a step-parent adoption of M.G. without the consent of Aaron. Doc. 1. The petition alleged that Aaron's consent was not necessary because he had failed without justifiable cause to provide for M.G.'s maintenance and support as required by law for at least one year immediately preceding the filing of the petition. *Id*. On January 8, 2015, Aaron filed his answer and objection to the adoption. Doc. 12. A hearing on the necessity of Aaron's consent was held on

March 16, 2015. Tr. 6. The trial court entered its judgment on April 2, 2015, holding that Aaron had failed to support M.G. for the year immediately preceding the petition, but that he had justifiable cause for that failure. Doc. 30. As a result, the trial court determined that Aaron's consent was necessary and, since Aaron did not consent, dismissed the petition for adoption. *Id*. Garman filed his notice of appeal on April 30, 2015. Doc. 31. On appeal, Garman raises the following assignment of error:

> **The trial court erred in holding that [Garman] failed to prove lack of justifiable cause for failure of [Aaron] to support the minor child for the one-year period prior to the filing of the petition for adoption.**

{¶3} Pursuant to R.C. 3107.06, the consent of both of a child's biological parents is required for an adoption to be granted. However, R.C. 3107.07(A) provides that the consent of a parent will not be required if "the parent has failed without justifiable cause to communicate with the minor or to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding * * * the filing of the adoption petition". R.C. 3107.07(A). The petitioner must prove by clear and convincing evidence not only that there has been a failure to support, but that there was a lack of justifiable cause. *In re Adoption of Masa*, 23 Ohio St.3d 163, 166, 492 N.E.2d 140 (1986). This requirement was later reiterated by the Ohio Supreme Court in *In re Adoption of Bovett*, 33 Ohio St.3d 102, 515 N.E.2d 919 (1987).

> **Pursuant to R.C. 3107.07(A), the petitioner for adoption has the burden of proving, by clear and convincing evidence, both (1) that the natural parent has failed to support the child for the requisite one-year period, and (2) that this failure was without justifiable cause.**
>
> **Once the petitioner has established, by clear and convincing evidence, that the natural parent has failed to support the child for at least the requisite one-year period, the burden of going forward with the evidence shifts to the natural parent to show some facially justifiable cause for such failure. The burden of proof, however remains with the petitioner.**

*Id.* at syllabus. Once a nonconsenting parent has articulated a justifiable cause, that parent has no burden to show that it was justifiable as that parent does not have the burden of proof. *In re Doe*, 123 Ohio App.3d 505, 508, 704 N.E.2d 608 (1997).

{¶4} "The question of whether justifiable cause for failure to pay child support has been proven by clear and convincing evidence in a particular case is a determination for the probate court and will not be disturbed on appeal unless such determination is against the manifest weight of the evidence." *Masa, supra at 163.* As long as the record contains some competent and credible evidence supporting the probate court's findings, the judgment will be affirmed. *In re Adoption of Groh*, 153 Ohio App.3d 414, 2003-Ohio-3087, ¶31, 794 N.E.2d 695 (7th Dist.).

> **Parents have a duty in Ohio under common and statutory law to support their children. *Haskins v. Bronzetti*, 64 Ohio St.3d 202, 205 (1992). However, the person in custody of the child is not**

-4-

> **entitled to receive support payments from noncustodial parents on the basis of a general duty of support when no support order was issued at the time of the custody award. See *Meyer v. Meyer*, 17 Ohio St.3d 222, syllabus (1985). In addition, a natural parent is not obligated to provide support where the person in custody of the child is advised of the parent's financial condition and expresses no interest in receiving financial assistance. *In re Adoption of Hadley*, 2d Dist. Greene No. 90 CA 117, 1991 WL 227737.**

*In re J.A.B.,* 11th Dist. Trumbull No. 2013-T-0114, 2014-Ohio-1375, ¶44.

{¶5} At the hearing, Staci testified that no court proceedings were initiated after M.G.'s birth because they all wanted to avoid going to court. Tr. 17. Staci testified that Aaron, or his family on Aaron's behalf, had paid half of the hospital bill from the birth of M.G. Tr. 18. Two weeks after M.G. was born, the parties agreed that they would not go to court to have parental rights and responsibilities established and support was just to be discussed later. Tr. 19. Staci admitted that she had refused to give M.G.'s social security number to Aaron or his family so that they could set up any financial accounts for her. Tr. 21. Staci testified that in the year preceding the petition, Aaron had provided no support for M.G. Tr. 22. Staci denied telling Aaron that she did not want support. Tr. 23. According to Staci in July of 2013, Aaron told her he wanted to go to court to establish his rights and responsibilities and she told him to do what he felt was necessary. Tr. 24. On cross-examination, Staci admitted that prior to her marriage to Garman, she had consulted with a lawyer about him adopting M.G. Tr. 34. Staci also

admitted that she had originally allowed Aaron to visit with M.G. four times a month, but over time had decreased that visitation to twice a month and then when it was convenient for Staci after the petition for adoption was filed. Tr. 35, 51. Staci admitted that she did not want to go to court and have support established. Tr. 38-42. Staci indicated that she did not allow Aaron to visit with M.G. anyplace besides her home and only when she or her mother could supervise. Tr. 138.

{¶6} Garman testified that he was married to Staci. Tr. 54. However, he was not able to testify to any information as he was not aware of what conversations occurred between Staci and Aaron or as to what occurred between them. Tr. 55-56. On cross-examination, Garman testified that his only knowledge about the support was what Staci told him. Tr. 57. Garman also testified that he and Staci had started discussing having him adopt M.G. before they were married in 2013. Tr. 58.

{¶7} Aaron testified that after M.G. was born, he told Staci that he wanted to go to court to set up child support and visitation, but she stated that she preferred they "keep this civil and between us." Tr. 66. Aaron testified that Staci originally allowed him to visit with M.G. every other Wednesday and every other Saturday. Tr. 69. Then the visits were cut down to twice a month in June of 2012. Tr. 69. In December of 2013, Staci informed him he would have to text her and

she would tell him what time was "available to visit" M.G. Tr. 69. The visits occurred at Staci's home, though he was permitted to take M.G. to get ice cream a couple of times until Staci told him to stop doing that. Tr. 70. Aaron testified that he never went to court because he did not want to do anything that would be emotionally detrimental to M.G. and Staci was adamant that they not go to court. Tr. 71. According to Aaron, he was intimidated by Staci and was afraid that she would "cut [him] out of the picture". Tr. 71.

{¶8} On cross-examination, Aaron testified that he has paid into an account in his name for M.G.'s benefit. Tr. 74. Aaron also testified that Staci had never asked for any money. Tr. 76. Aaron admitted that he was employed and earned $14.50 an hour working at least forty hours a week. Tr. 77. Based upon his income, Aaron admitted that he has been able to financially assist in the support of M.G. Tr. 79. According to Aaron, he last spoke to Staci about going to court in December 2013. Tr. 80. Aaron's understanding of what was meant by going to court would be to establish child support and visitation. Tr. 80. However, Aaron admitted that he did not specifically use the words "child support" or have conversations specifically regarding financial support. Tr. 82. Aaron testified that Staci had told him that she did not want financial support from him for M.G. after M.G. was born and she never indicated differently. Tr. 83.

{¶9} On redirect, Aaron testified that the approximate balance in the account he had set up for M.G. was $18,500.00. Tr. 86. Aaron did not give that money to Staci because he was told by a prior attorney that the money would be viewed as a gift, not child support if it was not paid through the courts. Tr. 86. Aaron testified that each of the times that he suggested they go to court to resolve the issues of visitation and support, Staci talked him out of it, insisting that they could "still continue to be civil about this". Tr. 88. Staci told him that the reduction in visitation was because their schedules were so busy that it had to be that way. Tr. 88. Aaron testified that every time he would ask for additional time or to be allowed to have M.G. for a weekend, Staci would reduce his visitation, so he became scared of asking for anything. Tr. 89. As of November 2014, Staci had stopped all visitation. Tr. 89. On one occasion, Aaron was allowed to take M.G. to a restaurant down the street from Staci's mother's home, but when he took M.G. back, Staci was upset because he had not texted her to inform her that he was taking M.G. to that diner. Tr. 90. Upon questioning by the judge, Aaron testified that he had no items for M.G. at his home because Stacie did not permit M.G. to come to his home. Tr. 94-95.

{¶10} James Tesno ("Tesno") testified that he had consulted with Aaron on two separate occasions. Tr. 101. In February of 2008, he consulted with Aaron about a guardianship. Tr. 102. At a later meeting, they discussed filing a

proceeding in court to establish parental rights and responsibilities for M.G. Tr. 102. Although Tesno did not recall the exact advice he gave Aaron, he testified that he would usually advise a client to not make direct payments for support to the other parent, but to have a support order set up by the court. Tr. 103.

{¶11} Dennis McMahon ("McMahon") testified that he has been Aaron's employer since April of 2013. Tr. 111-12. McMahon testified that Aaron is quiet and does not speak up much. Tr. 112. When McMahon learned that Aaron had a daughter, he asked him about a child support order and Aaron told him that Staci did not want any. Tr. 112.

{¶12} Azile Mescher ("Azile") testified that she is Aaron's mother and M.G.'s grandmother. Tr. 117. Azile testified that after M.G. was born, the families had a meeting and the issue of financial responsibility was raised. Tr. 118. At that time, Staci told them that she did not want any money, just for Aaron to pay half of the hospital bill. Tr. 118-19. Aaron paid the bill by giving her the money as he did not have a checking account and she then paid it with a check. Tr. 127. Azile testified that she asked for M.G.'s social security number so that an account could be opened for M.G. in case Staci wanted money in the future. Tr. 119. According to Azile, Aaron talked to Staci on multiple occasions about going to court to establish parental rights and responsibilities, but ended up not doing it as he did not want to upset the situation. Tr. 121. Azile described Aaron as very

timid and more of a follower. Tr. 122. Azile testified that Aaron had been continuously contributing to an account for M.G.'s support in case Staci ever asked for money, but Staci has never asked. Tr. 130-31. When questioned by the judge, Azile testified that she asked for M.G.'s social security number to set up a fund, but Staci refused to give it to her and insisted that she did not want any financial help.[1] Tr. 131.

{¶13} On rebuttal Staci testified that she only permitted Aaron to see M.G. if he was supervised. Tr. 137. She claimed to have reasons for doing so based upon "some things that have happened in Aaron's past". Tr. 137. However, she does not believe that she is intimidating or controlling. Tr. 136-37. The judge then asked Staci about why she was reducing visitation. Tr. 140-41. Staci indicated that Aaron had been arrested for "some inappropriate stuff on his computer" and that he was convicted of it, but the record was sealed. Tr. 141. As a result, Staci has always insisted that the visits be supervised and Aaron is allowed to be in a room with M.G. by himself as long as Staci or her parents can see him. Tr. 142.

{¶14} In its judgment entry, the trial court determined that Garman had shown by a preponderance of the evidence that Aaron had failed to support M.G. for the year immediately preceding the filing of the petition. Doc. 30 at 3. This finding is supported by the evidence. The trial court then determined that Aaron

---

[1] The number was provided to Aaron after a couple of years had passed.

had put forth a facially justifiable reason for this failure based upon the fact that Staci had declined support and that she had actively interfered with the parent-child relationship between Aaron and M.G. Initially, this court notes that due to the inaction of both Aaron and Staci, there was no court ordered child support. Garman argues that the trial court's decision was erroneous because it was based upon Staci's failure to prosecute a claim for child support. Although this was one of the reasons offered by the trial court, it was only one of the factors considered as part of the totality of the circumstances. We would emphasize that prosecution of a claim for child support is not a necessary predicate to a finding of failure to support. The offer of support and the decline of it by Staci, along with her repeated statements that they should not go to court, but should keep it just between them, back the trial court's determination that a facially justifiable reason was provided. This then requires that Garman prove by clear and convincing evidence that there was no justifiable reason.

{¶15} The trial court in this case found that Garman had failed to prove by clear and convincing evidence that there was no justifiable reason for the lack of support. *Id*. at 5. In doing so, the trial court held as follows.

> **Under the circumstances of this case the parties['] interactions are an important consideration for this Court. On one hand the mother has been in *complete* control of every aspect of [M.G.'s] life. Staci dictated all contact between Aaron and [M.G.] from the beginning, controlling when, where and for how long visitation (between father and daughter) would be. Aaron, on**

> **the other hand, never wanted to make waves (with Staci) fearing disputes would cause emotional issues with [M.G.].**
>
> **During the Court's questioning of Staci, the Court inquired as to why visitation decreased as [M.G.] aged, as opposed to increasing as most visitation arrangements provide. Staci's response was that she had concerns for [M.G.'s] safety due to a criminal conviction that Aaron received while in college. Such conviction has since been expunged. Staci's explanation was not credible to this Court because her concerns were never revealed before being questioned by the Court. The Court finds that Staci's restrictions were not related to safety concerns for [M.G.] and that she actively interfered with the parent-child relationship between Aaron and [M.G.].**
>
> **The Court observed the demeanor, gestures and voice inflections of Staci and Aaron and concludes that Staci dominated Aaron and thwarted his ability to become a part of [M.G.'s] life by constricting his visitation and refusing support. Staci owed [M.G.] the duty to pursue child support from her father. Her pursuit of obtaining support is just as important as the father's responsibility to pay it.**

*Id*. at 4-5. All of these findings by the trial court were supported by the testimony at the hearing. Based upon the evidence before it, the trial court determined that Garman had not proven by clear and convincing evidence that Aaron lacked a justifiable reason for failing to provide support and maintenance for M.G. as there was no court order for support and Staci had repeatedly discouraged any suggestion of going to court and had previously refused financial assistance when it was offered.. As there was competent, credible evidence to support the judgment of the trial court, the trial court did not abuse its discretion in

determining that Aaron's consent to the adoption was necessary and in dismissing the petition for adoption. The assignment of error is thus overruled.

{¶16} Having found no error prejudicial to appellant in the particulars assigned and argued, the judgment of the Court of Common Pleas, Probate Division is affirmed.

*Judgment Affirmed*

**ROGERS, P.J. and SHAW, J., concur.**

**/hlo**