[Cite as *In re Petition for Adoption of A.J.S.*, 2018-Ohio-708.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| IN THE MATTER OF THE PETITION FOR ADOPTION OF: A.J.S., A MINOR | ) ) ) ) ) ) ) ) ) | CASE NO. 17 MA 0118<br><br>OPINION |

CHARACTER OF PROCEEDINGS: Civil Appeal from the Court of Common Pleas, Probate Division of Mahoning County, Ohio
Case No. 2016 AD 0004

JUDGMENT: Affirmed.

APPEARANCES:

For Appellee
Attorney Matthew Giannini
1040 South Commons Place, Suite 200
Youngstown, Ohio 44514

For Appellant
Attorney R. Kibler
134 West Pine Street
Lisbon, Ohio 44432

JUDGES:

Hon. Gene Donofrio
Hon. Cheryl L. Waite
Hon. Carol Ann Robb

Dated: February 22, 2018

DONOFRIO, J.

{¶1} Appellant, W.C., appeals from a Mahoning County Probate Court judgment granting the petition of appellee, J.S., for the adoption of A.S.

{¶2} Mother gave birth to A.S. on December 27, 2010. Appellant is A.S.'s biological father. Mother and appellant were never married. For some time after A.S.'s birth, appellant exercised regular visitation with her. No parenting order was in place, but mother and appellant worked out a visitation schedule. Appellant also paid child support at that time.

{¶3} Appellant last visited with A.S. in February 2014. On July 15, 2014, mother married appellee. In December 2014, appellant filed a motion in the Trumbull County Common Pleas Court for the reallocation of parental rights and responsibilities. But appellant did not follow through with the motion and it was dismissed. Appellant also failed to appear at a child support contempt hearing in April 2015. The Trumbull County Court ordered that appellant was to have no companionship at that time.

{¶4} Appellee filed a petition to adopt A.S. on February 26, 2016. The petition alleged that appellant's consent was not required because (1) he had failed without justifiable cause to provide more than de minimus contact with A.S. for at least one year preceding the filing of the petition and (2) he had failed without justifiable cause to provide for A.S.'s maintenance and support for at least one year preceding the filing of the petition. Appellant filed objections to the proposed adoption.

{¶5} The probate court held a hearing on August 10, 2016, on the issue of whether appellant's consent to the proposed adoption was required. In a September 27, 2016 judgment entry, the court found that appellant had failed without justifiable cause to provide for A.S.'s maintenance and support for at least one year preceding the filing of the adoption petition. The court noted that the last time appellant made a child support payment was in July 2014 and that appellant had not made any substantial payment to benefit A.S. The court found that a Christmas gift of a stuffed animal and kitchen playset was de minimis and did not fulfill the role of parental

support. It further found that appellant attempted to use his mother's (A.S.'s paternal grandmother's) desire to see A.S. and her gifts of money toward A.S.'s benefit to count toward his parental responsibility of child support. Consequently, the court found that appellant's consent was not required for the adoption, pursuant to R.C. 3107.07, and set the matter for a best interest hearing.

{¶6} Next, the probate court held the best interest hearing. In its June 29, 2017 judgment entry, the court found that appellant has had the opportunity to enforce his rights and has failed to follow through with what was required of him. It found the evidence demonstrated that appellant did not find it important to follow through with maintaining contact with A.S. or with supporting her with the necessities of food, shelter, and clothing. The court also found there was no evidence that the adoption was not in A.S.'s best interest. The court found the step-parent adoption was in A.S.'s best interest.

{¶7} Appellant filed a timely notice of appeal on July 26, 2017. He now raises two assignments of error.

{¶8} Appellant's first assignment of error states:

THE TRIAL COURT'S DETERMINATION THAT RESPONDENT-APPELLANT FAILED WITHOUT JUSTIFIABLE CAUSE TO PROVIDE MAINTENANCE AND SUPPORT FOR THE CHILD DURING THE ONE YEAR PERIOD PRIOR TO THE FILING OF THE PETITION FOR ADOPTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶9} Appellant contends the probate court erred in finding that he failed to provide maintenance and support for A.S. without justifiable cause. He asserts the evidence demonstrated that he purchased birthday and Christmas gifts for A.S. each year. Appellant also asserts the evidence demonstrated that he gave his mother money each month to pay for A.S.'s gymnastics classes from November 2014 through December 2015.

{¶10} Moreover, appellant argues his failure to provide maintenance and support was justifiable because he had lost his job. He was only working "odd jobs" and gave the money he earned to his mother to use for his support and for gymnastics lessons and gifts for A.S. Appellant points out that during this time, he did not have a car or a driver's license.

{¶11} Pursuant to R.C. 3107.07(A), consent to adoption is not required from:

A parent of a minor, when it is alleged in the adoption petition and the court, after proper service of notice and hearing, finds by clear and convincing evidence that the parent has failed without justifiable cause to provide more than de minimis contact with the minor or to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding either the filing of the adoption petition or the placement of the minor in the home of the petitioner.

{¶12} According to the statute, either a lack of contact or a lack of support can relieve the petitioner from having to obtain the parent's consent.

{¶13} A probate court has discretion to determine whether a biological parent provided support as contemplated by R.C. 3107.07(A) and the court's judgment will not be reversed absent an abuse of discretion. *In re Adoption of M.B.*, 131 Ohio St.3d 186, 2012-Ohio-236, 963 N.E.2d 142, ¶ 21. Abuse of discretion connotes more than an error of law or judgment; it implies the trial court's attitude was arbitrary, unreasonable, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶14} An adoption case such as this involves the termination of fundamental parental rights. Therefore, the burden of proof is clear and convincing evidence. Clear and convincing evidence is that proof which establishes in the minds of the trier of fact a firm conviction as to the allegations sought to be proved. *Cross v. Ledford*, 161 Ohio St. 469, 477, 120 N.E.2d 118 (1954). When a party must prove a claim by

clear and convincing evidence, a reviewing court must examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof. *State v. Schiebel*, 55 Ohio St.3d 71, 74, 564 N.E.2d 54 (1990).

**{¶15}** Thus, we must examine the evidence to determine whether the probate court properly found by clear and convincing evidence that appellant failed to provide for A.S.'s maintenance and support as required by law or judicial decree for at least one year immediately preceding the filing of the adoption petition. The probate court did not make a finding that appellant failed to provide more than de minimis contact with the minor. Therefore, this analysis will focus solely on the evidence as to maintenance and support.

**{¶16}** As to maintenance and support, the trial court heard testimony from appellant, mother, and paternal grandmother.

**{¶17}** Appellant testified that he owes in excess of $6,000 in child support. (Aug. 10, 2016 Tr. 19-20; Ex. 3). Specifically, the Child Support Enforcement Agency (CSEA) payment history report indicated appellant's arrearage was $6,430.83 as of July 31, 2016. (Aug. 10, 2016 Ex. 3). Appellant's court-ordered monthly obligation at that time was $239.90. (Aug. 10, 2016 Ex. 3). Appellant admitted that in the last two years, he made only one child support payment of $50. (Aug. 10, 2016 Tr. 20). He further admitted that the $50 payment was made after he was served with the adoption petition. (Aug. 10, 2016 Tr. 18-19).

**{¶18}** On April 20, 2015, appellant failed to appear at a hearing on his child support contempt case. (Aug. 10, 2016 Tr. 13; Ex. 2). A bench warrant was subsequently issued for his failure to appear. (Aug. 10, 2016 Tr. 13; Ex. 2). Additionally, at that time, the trial court ordered appellant's child support order to remain in effect and preserved his arrearage. (Aug. 10, 2016 Ex. 2).

**{¶19}** Appellant testified that during the year preceding the filing of the adoption petition, he gave the paternal grandmother money to pay for A.S.'s gymnastics lessons. (Aug. 10, 2016 Tr. 25). He did not give any money directly to

mother for A.S.'s benefit. (Aug. 10, 2016 Tr. 25-26). He also testified that during that time, he purchased a kitchen set and a stuffed animal that the paternal grandmother gave to A.S. (Aug. 10, 2016 Tr. 26-27).

**{¶20}** Appellant testified that he was unemployed for all of 2015. (Aug. 10, 2016 Tr. 32). He did not recall receiving any unemployment benefits. (Aug. 10, 2016 Tr. 32). He stated that he worked "under the table." (Aug. 10, 2016 Tr. 32). At no time did he give any of his earnings to the CSEA for A.S.'s benefit. (Aug. 10, 2016 Tr. 32). When asked how much money he earned in 2015, appellant responded that he did not know. (Aug. 10, 2016 Tr. 116).

**{¶21}** Mother testified that since February 26, 2015 (one year preceding the filing of the petition), she received a total of $50 in child support. (Aug. 10, 2016 Tr. 38). When asked if A.S. received any gifts since that time from appellant, mother testified that she received a stuffed animal in the mail from him. (Aug. 10, 2016 Tr. 38-39). Other than the $50 and the stuffed animal, mother testified she had received nothing from appellant for A.S. in the year preceding the filing of the petition. (Aug. 10, 2016 Tr. 39). Prior to that time, mother testified she last received a child support payment from appellant in July 2014 for $96. (Aug. 10, 2016 Tr. 39).

**{¶22}** Mother also testified that the paternal grandmother paid for A.S.'s gymnastics lessons for 14 months ending in December 2015. (Aug. 10, 2016 Tr. 40-41). She stated that the paternal grandmother made payments of $64 per month directly to the gymnastics facility for A.S. (Aug. 10, 2016 Tr. 40-41). The paternal grandmother indicated to mother that she was the one paying for the gymnastics lessons, not appellant. (Aug. 10, 2016 Tr. 41). Mother stated the paternal grandmother told her she paid for gymnastics when she got paid. (Aug. 10, 2016 Tr. 54).

**{¶23}** The paternal grandmother testified appellant gave her the money to pay for A.S.'s gymnastics. (Aug. 10, 2016 Tr. 72). She stated it was approximately $60 per month. (Aug. 10, 2016 Tr. 72). And the grandmother testified that both she and appellant bought Christmas gifts for A.S. in 2015. (Aug. 10, 2016 Tr. 76-77).

**{¶24}** The probate court found the testimony that appellant paid for A.S.'s gymnastics to be unbelievable. The court went on to find that it could not consider a grandmother's payment of moneys for the child to count toward appellant's child support obligation.

**{¶25}** The evidence here is undisputed that, at the time of the hearing, appellant had a child support arrearage of approximately $6,500 and had paid only $50 in the past two years in child support, that being after the filing of the petition. The testimony was also undisputed that appellant did not give any money to mother for A.S.'s benefit for the past two years.

**{¶26}** The testimony was also clear that the paternal grandmother made payments to the gymnastics facility for 14 months to pay for A.S.'s gymnastics lessons, with the last payment in December 2015. The trial court did not believe the testimony that appellant gave the paternal grandmother the money to pay for the gymnastics lessons. Instead, the court believed the testimony that the grandmother was the source of these payments. This was a matter of witness credibility. The trier of fact occupies the best position to watch the witnesses and observe their demeanor, gestures and voice inflections and to utilize these observations in weighing credibility. *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). Thus, we will not second-guess the probate court's judgment on credibility.

**{¶27}** Next, we must determine whether the grandmother's gymnastics payments could be credited to appellant as providing maintenance and support for A.S. as required by law or judicial decree.

**{¶28}** Appellant asserts there is case law from this court holding that payments donated by others on behalf of the parent constitute maintenance and support for the purposes of R.C. 3107.07(A). Citing *In re Wells*, 7th Dist. 00 BA 49, 2001-Ohio-3411.

**{¶29}** In *Wells*, the probate court found the mother's consent was not necessary for a step-parent adoption in part because it found the mother had failed to

support her children for the one-year period contemplated by R.C. 3107.07(A). On appeal, the mother argued this finding was against the manifest weight of the evidence because her parents had been regularly making her child support payments on her behalf. The probate court acknowledged the payments made by the mother's parents. It also noted there was no arrearage. But the court still found that the mother had failed to provide for the maintenance and support of her children for the year preceding the petition. We framed the issue on appeal as: "[W]hether the satisfaction of a child support obligation by the obligor's parents, who are under no duty to so satisfy, constitutes the provision of maintenance and support so as to require the parent's consent for adoption of her child." *Id.*

{¶30} In analyzing the issue, we examined R.C. 3107.07(A):

{¶31} First, the statute says, "to provide for." One can "provide for" their child's support without personally writing a check and even without spending their own money. Secondly, the statute references a "judicial decree" which requires that support be paid. The judicial decree of child support pertinent to this case was satisfied on appellant's behalf. Support was paid to her children in a timely and regular manner; no arrearage existed. *Id.*

{¶32} As to the voluntariness of the payment, we pointed out that interception of a tax refund check and subsequent paying of the check to the obligee was found to constitute providing support even though there was no voluntary payment by the obligor. *Id.*, citing *In re Adoption of Kessler*, 87 Ohio App.3d 317, 323, 622 N.E.2d 354 (2d Dist.1993). We reasoned that regardless of the source of the funds, child support was received by CSEA, in the amount the mother was ordered to pay, and that support was credited to the mother's name. *Id.* Thus, we found the probate court erred in finding that the satisfaction of the mother's child support obligation by her parents did not negate a finding of a failure to provide maintenance and support as required by judicial decree. *Id.*

{¶33} This case, however, is distinguishable from *Wells*. In *Wells*, the grandparents satisfied the mother's monthly child support obligation. They paid the

money directly to the CSEA on the mother's behalf and the mother had no arrearage. Thus, the grandparents in *Wells* satisfied the child support obligation *required by judicial decree*. But in the case at bar appellant has a significant arrearage. The maintenance and support ordered by judicial decree was not satisfied. Moreover, the grandmother never made a payment to CSEA on appellant's behalf. Perhaps her intention was to gift gymnastics lessons to her granddaughter, not to satisfy appellant's child support obligation. Thus, *Wells* is not applicable here.

{¶34} The evidence produced at the consent hearing is clear and convincing that appellant failed to provide maintenance and support for A.S. as required by judicial decree for the year preceding the filing of the adoption petition without justifiable cause. Therefore, the probate court did not abuse its discretion in finding that appellant's consent was not required for A.S.'s adoption.

{¶35} Accordingly, appellant's first assignment of error is without merit and is overruled.

{¶36} Appellant's second assignment of error states:

THE TRIAL COURT ERRED IN DECIDING THAT THE ADOPTION WAS IN THE MINOR CHILD'S BEST INTEREST.

{¶37} Here appellant contends the probate court abused its discretion in finding the adoption is in A.S.'s best interest. He argues the court failed to consider the statutory best interest factors in rendering its decision and instead relied on the fact that appellant failed to follow through with his parental rights motion in Trumbull County.

{¶38} When considering the best interest factors, appellant claims the following. He asserts that adoption is not the least detrimental alternative. He points out that even without the adoption, A.S. would reside with mother and appellee but would still have the benefit of a relationship with appellant and his family. Appellant argues that his alienation from A.S. was due to mother's refusal of contact. And he asserts the adoption causes a great loss to A.S. of a loving extended family.

{¶39} Adoption matters are decided on a case-by-case basis through the exercise of the probate court's discretion. *In re Adoption of Charles B.*, 50 Ohio St.3d 88, 90, 552 N.E.2d 884 (1990). Thus, an appellate court reviews the probate court's decision to determine if the court abused its discretion.

{¶40} Pursuant to R.C. 3107.161(B), when a court makes a best interest determination in a contested adoption, the court shall consider the following factors:

(1) The least detrimental available alternative for safeguarding the child's growth and development;

(2) The age and health of the child at the time the best interest determination is made and, if applicable, at the time the child was removed from the home;

(3) The wishes of the child in any case in which the child's age and maturity makes this feasible;

(4) The duration of the separation of the child from a parent;

(5) Whether the child will be able to enter into a more stable and permanent family relationship, taking into account the conditions of the child's current placement, the likelihood of future placements, and the results of prior placements;

(6) The likelihood of safe reunification with a parent within a reasonable period of time;

(7) The importance of providing permanency, stability, and continuity of relationships for the child;

(8) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

(9) The child's adjustment to the child's current home, school, and community;

(10) The mental and physical health of all persons involved in the situation;

(11) Whether any person involved in the situation has been convicted of, pleaded guilty to, or accused of [various criminal offenses or situations where a child has been abused, neglected, or dependent].

**{¶41}** In this case, the probate court did not specifically refer to the statutory factors in its judgment entry. In the judgment entry, the court referenced appellant's testimony that it was difficult to maintain a relationship with A.S. due to his bad relationship with mother. The court noted, however, that appellant had filed a motion for reallocation of parental rights and responsibilities in another court in an effort to enforce his rights to see A.S. But appellant never followed through with the court-ordered evaluation and the case was dismissed. The court found appellant has had the opportunity to enforce his rights as the birth father and has failed to follow through with what was required of him. It found appellant did not find it important enough to follow through with maintaining contact with A.S.; supporting A.S. with the necessities of food, clothing, and shelter; and doing everything available to him to ensure he could see his child. Moreover, the court found appellant produced no evidence as to how this adoption was not in A.S.'s best interest. Thus, the court found the adoption was in A.S.'s best interest.

**{¶42}** In another step-parent adoption case where the probate court did not specifically refer to the statutory factors in the judgment entry, this court still reviewed the court's decision because the record indicated the court's consideration of the factors:

In the matter at hand, R.C. 3107.161(B) is not referenced in the judgment entry or at the best interest hearing. * * *

However, it can be gleaned from the record that the probate court did consider the R.C. 3107.161(B) factors. This court can determine from the judgment entry, the evidence presented at the best interest hearing, and the questions asked by the court at the best interest hearing that the relevant R.C. 3107.161(B) factors were

considered.

**{¶43}** *Matter of Adoption of M.R.M.*, 7th Dist. No. 17 MA 0088, 2017-Ohio-7710, ¶¶ 20-21.  In *M.R.M.*, we examined the transcript from the hearing and noted the court's relevant questions and the fact that most of the factors were addressed by the testimony.

**{¶44}** The same analysis in this case also reveals that the probate court considered the R.C. 3107.161(B) factors.

**{¶45}** Before the best interest hearing, Kim Stewart, an adoption assessor from Northeast Ohio Adoption Services met with mother, appellee, and A.S. in their home to assess their relationships, bonds, and the well-being of the child and the home.  (Nov. 2016 Tr. 7-8).  Stewart spent some time talking with A.S. about the potential adoption.  (Nov. 2016 Tr. 9).  Stewart stated A.S. was five years old at the time.  (Nov. 2016 Tr. 9).  Stewart testified that A.S. knew her last name would change and she was happy about that because then she would have the same last name as the rest of her family.  (Nov. 2016 Tr. 10).  A.S. also related to Stewart what a "good daddy is," which was someone who spends time with her and takes care of her. (Nov. 2016 Tr. 10-11).  A.S. knew she had another dad (appellant) but told Stewart that he did not spend time with her.  (Nov. 2016 Tr. 11).  Stewart testified that A.S. views appellee as her father.  (Nov. 2016 Tr. 11).

**{¶46}** Stewart also observed A.S. with appellee.  (Nov. 2016 Tr. 9-10). Stewart observed a significant father-daughter bond between appellee and A.S. (Nov. 2016 Tr. 10).  She noted A.S. calls appellee "dad" and is very comfortable around him. (Nov. 2016 Tr. 10).  In Stewart's opinion, it was in A.S.'s best interest for appellee to adopt her.  (Nov. 2016 Tr. 11-12).

**{¶47}** Stewart's testimony addressed Factor 2 (the age of the child), Factor 3 (the wishes of the child), Factor 5 (whether the child will be able to enter a more permanent family relationship), Factor 7 (the importance of providing permanency, stability, and continuity of relationships for the child), and Factor 8 (the child's interaction and interrelationship with the child's parents, siblings, and any other

person who may significantly affect the child's best interest). Based on Stewart's testimony, each of these factors weighs in favor of granting the adoption. Moreover, Stewart's testimony was the only testimony from a witness without a direct interest in the case.

**{¶48}** Mother testified that appellee has been residing with her and A.S. for two years and several months. (Nov. 2016 Tr. 25). She testified that A.S. is playful with appellee and asks him a lot of questions as to how to do things. (Nov. 2016 Tr. 26). Mother indicated that appellee has always made A.S. feel a part of the family despite his not being her biological father. (Nov. 2016 Tr. 27). She stated that she and appellee are both employed and share all expenses including those for A.S.'s care. (Nov. 2016 Tr. 27-28). Mother also testified that appellee has many family members nearby including his father, grandparents, and siblings, who all interact with A.S. on a regular basis. (Nov. 2016 Tr. 28-29). She testified that appellee takes A.S. to doctor's appointments. (Nov. 2016 Tr. 30). Mother further testified that appellee has cared for A.S. unconditionally through temper tantrums, her first day of school, and making sure she has food and clothing. (Nov. 2016 Tr. 32). In her opinion, the adoption is in A.S.'s best interest. (Nov. 2016 Tr. 31).

**{¶49}** Mother also testified that she had called the police once when she felt appellant had been harassing her. (Nov. 2016 Tr. 52). And she testified that appellant got into trouble with the police and she felt he was no longer a responsible parent, so she stopped allowing him to visit with A.S. (Nov. 2016 Tr. 52). Mother also testified that she has always had a better relationship with the paternal grandmother than with appellant and she has arranged visitation with the grandmother. (Nov. 2016 Tr. 48-49).

**{¶50}** Mother's testimony addressed Factor 8 (the child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest), and Factor 9 (the child's adjustment to the child's current home, school, and community). Again, these factors weigh in favor of the adoption. This testimony indicates that A.S. views appellee as her father. And

appellee has emotionally and financially supported A.S. since he entered her life.

**{¶51}** Appellant testified that it had been over a year since he last saw A.S. (Nov. 2016 Tr. 55). Appellant blamed his lack of contact with A.S. on mother. (Nov. 2016 Tr. 55-56). He stated he regularly visited with A.S. until she turned four. (Nov. 2016 Tr. 56). Appellant stated that until that time, A.S. also interacted with his extended family. (Nov. 2016 Tr. 57). But he agreed that A.S. had not seen any of his family for the last two years. (Nov. 2016 Tr. 69). Appellant testified that he wanted a relationship with A.S. and he opined the adoption was not in her best interest. (Nov. 2016 Tr. 63).

**{¶52}** Appellant also testified that when he was unable to see A.S. he suffered from extreme sadness and anxiety, which caused him to seek medical treatment. (Nov. 2016 Tr. 61-62, 73-74).

**{¶53}** On cross-examination, appellant acknowledged that he filed a motion in 2014 for custody of A.S. (Nov. 2016 Tr. 64). He could not recall whether he showed up for any of the hearings on that case or whether he followed through with the assessment. (Nov. 2016 Tr. 64-65). Appellant agreed that his motion was dismissed because he failed to appear for the hearings. (Nov. 2016 Tr. 65). He agreed he could have pursued visitation through the legal system. (Nov. 2016 Tr. 65).

**{¶54}** Appellant's testimony addressed Factor 4 (the duration of the separation of the child from a parent) and Factor 10 (the mental and physical health of appellant). The testimony indicated that at the time of the hearing, A.S. had no contact with appellant for at least one year and perhaps as long as two years. And while appellant tried to blame his lack of a relationship with A.S. on mother, he admitted that he failed to pursue any legal avenues to see A.S.

**{¶55}** The paternal grandmother testified she had been a part of A.S.'s life since she was born. (Nov. 2016 Tr. 76). Appellant resided with her, so when appellant had visits with A.S., the grandmother was there. (Nov. 2016 Tr. 76). She testified that when A.S. was with them, appellant played with her, cooked for her, and bought her what she needed. (Nov. 2016 Tr. 76-77). The grandmother testified that

A.S. was a part of their family life when she was with them. (Nov. 2016 Tr. 80).

**{¶56}** The grandmother's testimony addressed Factor 8 (the child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest). The grandmother's testimony indicated that she and appellant both had good relationships with A.S. when they were visiting with her. And while the grandmother's testimony may weigh against the adoption, the majority of the evidence discussed above weighs in favor of the adoption.

**{¶57}** The testimony addressed at least eight of the eleven statutory factors. And in addition to the statutory factors, the probate court can consider any other relevant factor. R.C. 3107.161(B). In this case, as discussed above, the probate court found highly relevant the fact that appellant failed to follow through with any efforts to maintain a relationship with A.S.

**{¶58}** Moreover, as was the case in *M.R.M.*, the probate court asked its own questions of the witnesses. The court inquired of the adoption assessor how long she spent with the family, what type of interaction she had with A.S., and whether A.S.'s responses appeared to be age-appropriate. (Nov. 2016 Tr. 18-21). The court also asked its own questions of mother and appellant. The court questioned mother about her relationship with appellant and the grandmother and about whether mother denied appellant visitation. (Nov. 2016 Tr. 47-54). And the court questioned appellant about his depression symptoms and employment. (Nov. 2016 Tr. 73-74). As was the case in *M.R.M*, the court's questioning shows its active involvement and supports the conclusion that it considered the statutory factors. *M.R.M.*, at ¶ 34.

**{¶59}** Thus, the record supports the conclusion that the probate court considered the R.C. 3107.161(B) factors and other relevant factors

**{¶60}** A person who contests an adoption has the burden of providing the court with material evidence needed to determine the child's best interest and must establish that the child's current placement is not the least detrimental available alternative. R.C. 3107.161(C). Thus, the burden in this case was on appellant as the person who was contesting the adoption.

**{¶61}** Moreover, this matter was within the probate's broad discretion. The test here is not whether this court may have reached a different conclusion. Instead, the test is whether the probate's court judgment was arbitrary, unreasonable, or unconscionable. Given the evidence and the probate court's broad discretion, we cannot conclude that the probate court abused its discretion in finding the adoption to be in A.S.'s best interest.

**{¶62}** Accordingly, appellant's second assignment of error is without merit and is overruled.

**{¶63}** For the reasons stated above, the probate court's judgment is hereby affirmed.

Waite, J., concur

Robb, P. J., concur