[Cite as *In re Adoption of F.W.G. v. Blazo*, 2022-Ohio-2650.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## MAHONING COUNTY

IN THE MATTER OF THE PETITION FOR THE ADOPTION OF: F.W.G.,

A MINOR,

TERRY WILLIAM JOSEPH GIGAX, ET AL,

Plaintiffs-Appellees,

v.

STEPHEN BLAZO,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 21 MA 0113**

---

Civil Appeal from the
Court of Common Pleas, Probate Division, Mahoning County, Ohio
Case No. 2021 AD 008

**BEFORE:**
Gene Donofrio, Cheryl L. Waite, Carol Ann Robb, Judges.

---

**JUDGMENT:**
Reversed.

---

*Atty. James E. Lanzo*, 4126 Youngstown-Poland Road, Youngstown, Ohio 44514, for Plaintiffs-Appellees and

*Atty. Rhonda G. Santha*, 6401 State Route 534, West Farmington, Ohio 44491, for Defendant-Appellant.

Dated:
July 12, 2022

**Donofrio, J.**

{¶1}   Appellant Stephen Blazo (Appellant) appeals from a November 29, 2021 Mahoning County Common Pleas Probate judgment granting the petition of Terry William Joseph Gigax and Lisa Marie Gigax (Appellees) to adopt his minor son, F.W.G.  (Minor), born on January 1, 2019. The birth certificate lists Maria Cruz Polas as Minor's mother (Mother) and appellant as his father.

{¶2}   On January 7, 2019, Minor was removed from Mother's care because she used drugs while pregnant and Minor was born with drugs in his system. Appellant was arrested a week after Minor's birth and released from jail after 60 days. (Nov. 3, 2021 Tr. at 127). Minor was placed in appellees' home on February 22, 2019 through a kinship placement as Mother is the niece of Mr. Gigax's stepfather. Mother visited Minor one hour a week until July of 2019 and has had no contact since that time. Appellant visited Minor one hour per week after his release from jail until he was subsequently arrested on another case on July 26, 2019. He was then sentenced to prison until 2032, although he has appealed this case. (Nov. 3, 2021 Tr. at 15-16, 20-21, 127-128).

{¶3}   On November 26, 2019, the Mahoning County Juvenile Court adopted a magistrate's decision granting legal custody to appellees. (Nov. 26, 2019 J.E.). The court noted that a magistrate's hearing was held on November 7, 2019 on appellees' motion for legal custody and motions for legal custody and visitation filed by appellant's sister, Patricia Pepe. The court indicated that Ms. Pepe had withdrawn her custody motion and the parties agreed that she could have supervised visitation at Hope House once per week. The court found that the children's services agency made reasonable and diligent efforts to help Mother address her substance abuse and mental health issues, and her lack of stable housing. However, Mother relapsed, was terminated from the dependency treatment court, and had outstanding warrants for her arrest. The court further noted that the children's services agency was unable to help appellant since he was incarcerated. The court granted legal custody to appellees and stated that they agreed to continue

Case No. 21 MA 0113

visitation between Minor and his paternal relatives, including Ms. Pepe and appellant's mother, Mary Garcia.

{¶4} On March 15, 2021, appellees filed a petition for adoption of Minor. The Mahoning County Probate Court held the petition in abeyance pending service on appellant because the adoption petition indicated that his consent to adoption was necessary. (Mar. 26, 2021 J.E.).

{¶5} On April 12, 2021, the probate court issued a notice of hearing on the adoption petition and indicated that Mother's consent to the adoption was not required under R.C. 3107.07 because she failed without justifiable cause to provide more than de minimis contact with Minor for the requisite one-year period preceding the filing of the adoption petition or placement of Minor in appellees' home. (Apr. 12, 2021 Notice of Hearing).

{¶6} The court also issued a hearing notice to appellant informing him that if he contested the adoption, he needed to file an objection. (Apr. 12, 2021 Notice of Hearing). Appellant filed an objection on October 27, 2021, through counsel. He also requested and was granted transportation to the hearing from the North Central Correctional Complex.

{¶7} On November 3, 2021, the probate court held a hearing on the adoption petition. Appellees' counsel moved to amend the pleading to include a lack of maintenance and support by appellant for the one-year period prior to filing the adoption petition. (Nov. 3, 2021 Tr. at 13). The court granted the motion to amend. (Nov. 3, 2021 Tr. at 13). Each appellee testified, as well as a juvenile court records custodian, appellant, the court assessor, Ms. Pepe, and Ms. Garcia.

{¶8} On November 29, 2021, the court issued a judgment entry stating that it had received evidence at the November 3, 2021 hearing and found that the consent of Mother and appellant were not necessary to the adoption. (Nov. 29, 2021 J.E.). The court then proceeded to review each of the relevant factors for determining the best interests of the child in an adoption under R.C. 3107.161. (Nov. 29, 2021 J.E.). The court held that adoption was appropriate and approved appellees' petition for adoption. The court also issued a Final Decree of Adoption.

{¶9} On December 7, 2021, appellant filed a notice of appeal. He raises two assignments of error.

Case No. 21 MA 0113

**{¶10}** In his first assignment of error, appellant asserts:

> **Trial Court's finding that Appellant failed in providing Maintenance and Support to his minor child was against the Manifest Weight of the Evidence, and, therefore, the Ruling that Appellant's consent to the adoption of his child was unnecessary was in error.**

**{¶11}** Appellant contends that the probate court erred by finding that his consent was unnecessary for appellees to adopt Minor because he failed to provide for Minor's maintenance and support for the one year preceding the adoption petition as required under R.C. 3107.07(A). He asserts that he provided maintenance and support by giving money to Ms. Pepe and Ms. Garcia while he was incarcerated for them to buy items such as food and clothing for Minor when they visited him. He cites *In re Adoption of Canter*, 5th Dist. Perry No. 98-CA-5, 1999 WL 668799 (Aug. 20, 1999) and *In re Adoption of B.M.S.*, 10th Dist. Franklin No. 07AP-236, 2007-Ohio-5966, to assert that the items that his sister and mother bought for Minor with his money "cannot be viewed as a nominal contribution."

**{¶12}** In *Canter*, the Fifth District affirmed the probate court holding that the biological mother's consent was required before granting an adoption petition because she had provided sufficient maintenance and support. Appellant here quotes that court's holding that even though the mother's contributions were minimal, she "did not fail to provide maintenance and support to such a degree as to equate abandonment." 1999 WL at *4. Appellant points out that the mother in *Canter* bought food and clothing for her child two months before she was imprisoned, including two pairs of shoes, diapers and socks, and she gave the maternal grandmother money to buy clothing for the child to keep at the grandmother's home. Appellant asserts that his case is similar.

**{¶13}** Appellees argue that appellant's contributions of money to his sister and mother to provide clothing, cookies, and toys for Minor were insufficient to constitute maintenance and support. They note appellant's admission at the hearing that he did not provide for Minor's daily expenses of medical care, shelter, and food. They contend that toys and clothes do not constitute maintenance and support when these items are not

requested, or when the child is already provided those items at home. Appellees also point out appellant's testimony that even though he made $200.00 per month providing tailoring services in prison, he provides none of this money to appellees to care for Minor.

**{¶14}** After closing arguments on the issue of parental consent, the trial court concluded on the record that Mother's consent was not necessary because she failed to provide de minimis contact or maintenance and support for Minor during the last year. (Nov. 3, 2021 Tr. at 171-172).

**{¶15}** As to appellant, the court found that de minimis contact was established because he had done everything that he could to have contact with Minor. (Nov. 3, 2021 Tr. at 172). However, the court concluded that appellant had not provided maintenance and support for Minor. (Nov. 3, 2021 Tr. at 174).

**{¶16}** R.C. 3107.07(A) states that a parent's consent to adoption is not required:

> When it is alleged in the adoption petition and the court, after proper service of notice and hearing, finds by clear and convincing evidence that the parent has failed without justifiable cause to provide more than de minimis contact with the minor or to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding either the filing of the adoption petition or the placement of the minor in the home of the petitioner.

**{¶17}** An adoption case such as this involves the termination of fundamental parental rights. Therefore, the burden of proof is clear and convincing evidence. *In the Matter of A.J.S.,* 7th Dist. Mahoning No. 17 MA 0118, 2018-Ohio-708, § 14. Clear and convincing evidence is that proof which establishes in the minds of the trier of fact a firm conviction as to the allegations sought to be proved. *Id.*, citing *Cross v. Ledford*, 161 Ohio St. 469, 477, 120 N.E.2d 118 (1954). Thus, "[p]ursuant to R.C. 3107.07(A), the petitioner for adoption has the burden of proving by clear and convincing evidence (1) that the natural parent has failed to support the child for the requisite one-year period, and (2) that this failure was without justifiable cause." *In re Adoption of Bovett,* 33 Ohio St.3d 102, 515

N.E.2d 919 (1987), paragraph one of the syllabus, following *In re Adoption of Masa*, 23 Ohio St.3d 163, 492 N.E.2d 140 (1986).

**{¶18}** A probate court has discretion to determine whether a biological parent provided maintenance and support under R.C. 3107.07(A) and the court's judgment will not be reversed absent an abuse of discretion. *In re Adoption of M.B.,* 131 Ohio St.3d 186, 2012–Ohio–236, 963 N.E.2d 142, ¶ 21. Abuse of discretion connotes more than an error of law or judgment; it implies that the trial court's attitude was arbitrary, unreasonable, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**{¶19}** Moreover, "[t]he question of whether justifiable cause for failure to pay child support has been proven by clear and convincing evidence in a particular case is a determination for the probate court and will not be disturbed on appeal unless such determination is against the manifest weight of the evidence." *Id.* at ¶ 24, quoting *In re Adoption of Masa,* 23 Ohio St.3d 163, paragraph two of the syllabus. A reviewing court will affirm the judgment of the trial court as to justifiable cause as long as the record contains some competent and credible evidence to support the trial court's findings. *In re Adoptions of Groh*, 153 Ohio App.3d 414, 2003-Ohio-3087, ¶ 31.

**{¶20}** In the instant case, the probate court found that appellant had established that he provided more than de minimis contact with Minor as he testified that he would call his mother when she was visiting Minor and he would talk to him even though Minor was very young. (Nov. 3, 2021 Tr. at 113-114, 153, 157-160). Accordingly, the focus is solely on the evidence as to maintenance and support.

**{¶21}** Ohio law provides that biological parents have one of two statuses:

> First, a general obligation of parents to support their children imposed by law in R.C. 3103.03, and second, a specific child-support obligation imposed by judicial decree pursuant to R.C. 3109.05 and Chapter 3119 that supersedes the general obligation once the court issues its decree. When R.C. 3107.07(A) uses 'or' in the phrase 'by law or judicial decree,' it recognizes that a parent's obligation of support can have one of two possible statuses–general or specific. But a parent can have only one obligation status at a time.

Case No. 21 MA 0113

*In re Adoption of B.I.*, 157 Ohio St.3d 29, 2019-Ohio-2450, ¶ 27. The Ohio Supreme Court has held that a parent is not required to provide the general duty of maintenance and support under R.C. 3103.03 if a court had ordered the parent to pay child support, even if the court subsequently reduces the child support obligation to zero. *Id.* at ¶ 29. We have followed this holding. *See In re Adoption of A.N.W.,* 7th Dist. Belmont No. 15 BE 0071, 2016-Ohio-463, ¶ 30-31.

**{¶22}** There is no court-ordered child support in this case. Thus, under R.C. 3107.03(A), appellant has the general duty of support under R.C. 3103.03, which provides that "[t]he biological or adoptive parent of a minor child must support the parent's minor children out of the parent's property or by the parent's labor."

**{¶23}** Appellant testified that he was arrested a week after Minor was born and he was jailed and released after 60 days. (Nov. 3, 2021 Tr. at 127). He stated that upon release, he visited Minor once a week until he was incarcerated again on July 26, 2019 on a different offense. (Nov. 3, 2021 Tr. at 127-128). Appellant testified that when he was arrested this time, he gave Ms. Pepe $5,000.00 and gave his mother his car to sell in order to provide for Minor. (Nov. 3, 2021 Tr. at 132-133). He testified that he also gave a $1,400.00 stimulus check to his sister and a $1,300.00 stimulus check to his mother in 2021, and he told them to use this money for Minor. (Nov. 3, 2021 Tr. at 134, 143).

**{¶24}** When appellees' counsel asked why appellant did not send this money directly to appellees for daily support, he responded that he did not know their address and when he tried to call them, they did not pick up the phone. (Nov. 3, 2021 Tr. at 143-144). He stated that he never tried to get a child support order to pay appellees because he asked around "and they never said nothin'. We was going through the COVID and all that. I mean, money was tight." (Nov. 3, 2021 Tr. at 145). Appellant testified that he had $100-200 in his commissary and the following dialogue occurred between appellees' counsel and appellant at the hearing:

> Q: So you don't have any money to spend at the commissary?
>
> A: I got maybe 100 or $ 200 on there, that's it.
>
> Q: Okay. But you have access to some money?

A:  Yeah, I got - - I got - - they sold the car, whatever. They probably put up some money. I got - - plus I did a lot of roofing jobs for people and people owe me money.

Q:  I mean right now. You have access to money right now?

A:  I mean, I got - - I mean, I got a couple hundred on my account. And on my tailoring in prison, I make all kinds of money doing tailor work.

Q:  Sure.

A:  They paid me all - - they paid me all in food. And I get the food and I sell it to 'em.

Q:  Okay.

A:  I send the money to whoever I want to send it. You ain't allowed to do it, but I do it.

Q:  Okay. All right.

A:  I make a couple hundred a month just doing that.

Q: Okay. All right.

A:  Stuff like that.

Q:  Okay. But you're not sending any of that to the Gigaxes to spend on your child, correct?

A:  If they would gave me their address.

The Court:  It's a yes or no question, sir.

A: No.

Q: Okay. And quite frankly, you're not sending that to your mother or Patty to spend on your child. You gave Patty 5,000, you gave them the stimulus checks, that's what you gave them, correct?

A: Spend on the child, the kid.

Q: Yes. And they bought the child some presents, correct?

A: Yes, every time they see him. Especially my mother, every time she sees him, she brings him gifts, cookies.

Q: But again, we can agree that they are not spending this money on the day-to-day needs of the child, correct?

A: Every two weeks or every week - - Patty sees him every week, she's buying him toys and cars.

Q: I'm going to back up. You would agree that a child needs shelter, correct?

A: Yes.

Q: You would agree that a child needs food?

A: Yes.

Q: You would agree that a child needs medical care?

A: Yes.

Q: You would agree that the child needs to have the gas and the electric and the other utilities on in wherever the child is living?

A: Yeah.

Q: Okay. None of this money that you've left with Patty and your mom and that your mom gave to your other sister, I guess, none of

this money has been spent on any of that; none of this money has been spent on medical bills, correct?

A: No.

Q: None of this money has been spent on feeding the child, except for maybe your mom bought him some cookies over, correct?

A: Hold up. Patty feeds him at the Hope House, brings him food and feeds him all the time.

Q: Yeah, Patty brings cookies and stuff is it the Hope House.

A: No pizzas, food.

Q: Pizza, food for the - - okay.

A: Spaghetti, she makes him spaghetti.

Q: So Patty brings food to the Hope House. So this money is spent - - you would agree that your child needs to eat more than once a week, correct?

A: Yes.

Q: Okay.

A: But that's only time they get to see him.

Q: None of this money has been spent on - - and I don't - - and I think I may have already asked about medical bills - - but none of this money has been spent on any of the utilities for the home, correct?

A: No.

Q: Okay. So if we - - as we sit here today, the day-to-day, everyday, day-in-and-day-out needs of your child are being met by the Gigaxes, correct?

A:  Yes.

Q:  Okay.

A:  But they took that opportunity when they adopted him.

Q:  Well, that's why we're here.

A:  When they got custody of him and they took him in, they was only supposed to hold him for like four months. My sister would have got him.

Q:  That's why we're here. We're here because you would agree, that the child's mother cannot care for this child.

A:  She is on drugs and - -

Q:  Yeah, she's out there in the wind. We don't even know where she is.

A:  She loves her son, but it's a different story. When you're on - - going through a drug problem, you know what I'm sayin', I seen it happen to a lot of people - -

The Court:  Okay, that's enough. That's enough.

Q:  And you would agree in your current circumstances, you couldn't care for the child, correct?

A:  If I was out there I could.

(Nov. 3, 2021 Tr. at 145-150). Appellant further testified that he talked to appellee Terry on two occasions from prison and asked about Minor. (Nov. 3, 2021 Tr. at 141). Appellant stated that he asked Terry if Minor needed anything and told him that if so, appellant would have Ms. Pepe buy the items from his money or give appellees money for whatever was needed. (Nov. 3, 2021 Tr. at 141). Appellant's mother, Ms. Garcia, testified that she provided none of appellant's money directly to appellees, but she provided Minor with

Case No. 21 MA 0113

clothing and toys from appellant's money every week or two when she visited throughout 2019, 2020 and 2021, spending between $50 and $200 each time. (Nov. 3, 2021 Tr. at 18-119, 121-122). She explained that she received one of appellant's stimulus checks for $1,400.00 in 2021 and cashed it, giving the money to her daughter Kathy to hold. (Nov. 3, 2021 Tr. at 107). She testified that a second of appellant's stimulus checks in the amount of $1,300.00 was cashed and Ms. Pepe was given that money to hold. (Nov. 3, 2021 Tr. at 107). She stated that she would take money from appellant's cash before each visit with Minor and buy items for Minor. (Nov. 3, 2021 Tr. At 115).

{¶25} Ms. Garcia testified that when appellant's money held by Kathy was depleted, she obtained appellant's money from Ms. Pepe for clothing and toys for Minor. (Nov 3, 2021 Tr. at 117). She explained that when she took appellant's money from Ms. Pepe, she had to sign a paper stating the amount that she took. (Nov. 3, 2021 Tr. at 108-109). Ms. Pepe confirmed that she held appellant's money and gave her mother his money to buy things for Minor. (Nov. 3, 2021 Tr. at 117). She identified a picture from three weeks before the hearing and testified that Minor was wearing clothes that Ms. Garcia had bought with appellant's money. (Nov. 3, 2021 Tr. at 88). Ms. Garcia testified that she bought Minor a winter coat, a hat, gloves, socks, six pairs of pajamas, six jogging outfits, cups, toys, and books. (Nov. 3, 2021 Tr. at 109). She stated that she would bring these items to Minor when she visited him at appellees' house. (Nov. 3, 2021 Tr. at 113). She also testified that she would ask appellees at visits if they needed diapers or formula or anything else for Minor, and they told her that they had these things. (Nov. 3, 2021 Tr. at 119). She also indicated that when appellant called her each week to talk to Minor while she was visiting him, he would ask if Minor needed anything. (Nov. 3, 2021 Tr. at 113).

{¶26} After this portion of the hearing ended, the trial court stated on the record that appellant failed to provide maintenance and support for Minor. The court reasoned:

> However, the second prong is where I have the most problem. The maintenance and support.
>
> The maintenance and support is day-to-day, every day, expenses of this child. From your testimony, you're a very smart man. You're a very resourceful man. And I could tell that based upon how you have things set

up with your family, based upon their testimony of what you give them and how you give it to them and how they take care of it and how they account for it. You've also testified that you make money in prison. You sew things, you sell things. You're resourceful. You were able to have contact with the child. You were able to make telephone calls, get your mother to say you were somebody else, her friend, so you could talk to that child. That's resourcefulness. But while you're in this minimal security prison, you're unable to write a letter, to do e-mail, to find out where these folks live, which is public record, which your mother visits every day or every week, to say, hey, I'm willing to pay X amount of dollars a month, I want to give you something. You didn't do that. I have a problem with that.

And based upon that, I feel that you have not provided maintenance and support for your child, which you could have. The funds were there, but you failed to reach out and failed to provide for that child. Therefore, on the issue of consent, I find your consent is not necessary.

(Nov. 3, 2021 Tr. at 172-174). In the judgment entry, the court concluded that consent from Mother and appellant were not necessary and then proceeded to analyze the factors for determining whether the adoption was in Minor's best interest. (Nov. 29, 2021 J.E.). The court issued a judgment entry granting the adoption petition, but provided no analysis concerning parental consent. (Nov. 29, 2021 J.E.).

**{¶27}** Appellees contend that appellant did not meet his maintenance and support obligation because he failed to provide money to them or pay for Minor's day-to-day expenses. However, neither R.C. 3107.07 nor R.C. 3103.03(A) require the payment of daily expenses. In fact, neither statute defines maintenance and support.

**{¶28}** We have held that, "[m]aintenance and support, in the adoption context, do not refer simply to child-support payments or other monetary contributions." *In re Adoptions of Groh*, 153 Ohio App.3d 414, 424, 2003-Ohio-3087, citing *In re Adoption of McNutt*, 134 Ohio App.3d 822, 830, 732 N.E.2d 470 (4th Dist. 1999). We stated that "maintenance and support, as used in R.C. 3107.07(A), may mean any type of aid to feed, clothe, shelter, or educate the child; provide for health, recreation, travel expenses; or

provide for any other need of the child. *Id.* Supplying shoes, diapers, or any other clothing can constitute support and maintenance." *Id.*

**{¶29}** In *Groh,* we also held that "[a]ny exception to the parental consent requirement for adoption 'must be strictly construed so as to protect the right of natural parents to raise and nurture their children.' " *Id.* at ¶ 38, quoting *In re Adoption of Schoeppner*, 46 Ohio St.2d 21, 24, 345 N.E.2d 608 (1976). We explained that "[w]hen a parent is accused of not having provided support and maintenance for one year, the relevant inquiry is not whether the parent provided support 'but whether the parent's failure to support * * * is of such magnitude as to be the equivalent of abandonment.' " *Groh*, at ¶ 39, quoting *Celestino v. Schneider*, 84 Ohio App.3d 192, 196, 616 N.E.2d 581 (6th Dist. Lucas 1992); and *In re Adoption of McNutt*, 134 Ohio App.3d at 829.

**{¶30}** Ohio appellate courts continue to differ on that which suffices for maintenance and support "by law." *See e.g., In re Adoption of C.L.Y.,* 3rd Dist. Hancock No. 5-21-23, 2022-Ohio-1133, ¶ 24 (maintenance and support not met where incarcerated biological father provided $150.00 and two pairs of shoes during the relevant time period); *In re Adoption of B.G.F.*, 3rd Dist. Shelby No. 17-18-06, 2018-Ohio-5063, 126 N.E.3d 348 (biological father's two $50.00 checks for gifts were de minimis and maintenance and support not met); *In Re C.N.A.* 3rd Dist. Shelby No. 17-17-20, 2018-Ohio-89 (maintenance and support met when biological father gave money to mother to purchase rental homes to use as income while he was incarcerated and he offered to buy shoes for child and pay for school); *Matter of Adoption of D.J.S.*, 5th Dist. Tuscarawas No. 2017 AP 08 0023, 2017-Ohio-8567 (court erred by finding clear and convincing evidence that mother failed to support son and "that failure was of such a magnitude as to be the equivalent of abandonment. Appellant had regular visitation with her son, including overnight visits, and provided support and maintenance during those visits"); *Gorski v. Myer*, 5th Dist. Stark No. 2005CA00033, 2005-Ohio-2604 (biological father provided maintenance and support when he visited child every other weekend and provided him food, clothing, and toys); *In re McNutt*, 134 Ohio App.3d at 829-830 (4th Dist.) ("a 'meager' amount of support is sufficient to avoid a finding that the parent's consent is not required").

Case No. 21 MA 0113

**{¶31}** Here, we find that the probate court abused its discretion by determining that appellant failed to meet his general duty to provide maintenance and support to Minor as required by law under R.C. 3107.07(A) and R.C. 3103.03(A). In making this determination, we emphasize that "[a]doption cases are all fact specific and turn on the particular facts and circumstances in each case." *In the Matter of the Adoption of Way*, 4th Dist. Washington No. 01CA23, 2002 WL 59629, 2002-Ohio-117. We also keep in mind the need for strict construction of statutes and the law to protect the right of natural parents.

**{¶32}** The record established that appellant gave $2,700.00 to his sister and mother in 2021 to provide for Minor while appellant was incarcerated. With this money, they bought Minor food, clothing, socks, cups, toys, and books. Appellees were asked if Minor needed any other items, such as formula and diapers. They said no. This is a factor to consider in determining whether a biological parent has provided maintenance and support. *See Groh*, 2003-Ohio-3087 at ¶49. Appellant also provided $5,000.00 to his sister in July of 2019 and had his mother sell his car to provide for Minor prior to the relevant one-year period. This serves as additional support for a finding that appellant did not intend to abandon Minor. These circumstances lead us to conclude that the probate court abused its discretion in finding that appellant failed to provide maintenance and support to Minor and that his consent to the adoption was unnecessary.

**{¶33}** Accordingly, appellant's first assignment of error is with merit and is sustained.

**{¶34}** In his second assignment of error, appellant asserts:

> **Trial Court erred in its failure to reach the required step of**
> **finding that the lack of Appellant's support was justifiable.**

**{¶35}** Because we find merit to appellant's first assignment of error, we need not address this assignment of error. Therefore, it is rendered moot.

**{¶36}** For the reasons set out above, we hereby find that appellant's first assignment of error is with merit and the probate court's judgment is hereby reversed.

Waite, J., concurs.

Robb, J., concurs.

Case No. 21 MA 0113

_____

For the reasons stated in the Opinion rendered herein, the appellant's first assignment of error is sustained and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Mahoning County, Ohio, is reversed. Appellant's second assignment of error is moot.  Costs to be taxed against the Appellee.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**